**1104**

772 P.2d 1198

Albert J. and Sharon L. BRUNO, husband and wife, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BOISE, now known as United First Federal Savings & Loan Association, a federally chartered savings and loan association, Defendant–Respondent.

No. 16714.

Supreme Court of Idaho.

Jan. 19, 1989.

Rehearing Denied May 16, 1989.

Jon Steele, Ellis, Brown, Sheils & Steele, Chartered, Boise, for plaintiffs-appellants.

John Kurtz, Jr., Hawley, Troxell, Ennis & Hawley, Boise, for defendant-respondent.

WALTERS, Judge, Pro Tem.

This case originated as a class action suit by Albert and Sharon Bruno against United First Federal Savings & Loan Association (First Federal). The Brunos claim they, and other members of the proposed class, suffered monetary damages by First Federal unlawfully charging assumption fees and higher interest rates as a condition of permitting assignment of mortgage loans. The district court denied the Brunos' motion for class certification. The Brunos then pursued their individual case against First Federal. The district court subsequently granted summary judgment in favor of First Federal. On appeal the issues are: Did the district court err in granting summary judgment against the Brunos and in favor of First Federal? Did the district court err in denying class certification? Both sides seek attorney fees. We hold that the district court did not err in granting summary judgment. We consequently need not reach the class certification issue raised by the Brunos. We award no fees on appeal.

On the question of the summary judgment we find ourselves in agreement with the well-written opinion of the district court below. Because the material facts are undisputed, we adopt the district court's recitation of the facts (with only minor additions). Those facts are as follows. In December of 1980, Albert and Sharon Bruno, as buyers, entered into an earnest money agreement with Lotwick and Kathryn

Reese, as sellers, to purchase certain residential real property in Ada County, Idaho. The parties agreed that the Brunos would assume the obligations of a deed of trust (hereinafter referred to as the Reese deed of trust) executed by the Reeses in 1977, wherein the defendant in this lawsuit, United First Federal Savings & Loan Association (known as First Federal Savings & Loan Association of Boise at the time of the 1977 transaction) was named as beneficiary. Under this 1977 deed of trust the Reeses were to repay the principal they borrowed from First Federal Savings and Loan Association of Boise at a nine percent interest rate.

After signing the earnest money agreement with the Reeses, the Brunos submitted an application to First Federal seeking approval for the Brunos to assume the obligations under the Reese deed of trust. In January, 1981, the Brunos became aware that First Federal would allow the Brunos to assume the Reese deed of trust but only on the condition that an assumption fee be paid and if the Brunos would agree to an increase of two percent in interest from the nine percent rate the Reeses had paid. By letter dated January 26, 1981, plaintiff Sharon Bruno advised her real estate agent that the Brunos were fully apprised of the increase in the interest rate to eleven percent and that the Brunos accepted this condition of the assumption.

On February 20, 1981, the Reese/Bruno sale was closed. Contemporaneously therewith, the Reeses, the Brunos and First Federal executed an assumption agreement whereby the Brunos expressly agreed to assume the indebtedness secured by the Reese deed of trust in favor of First Federal at the increased interest rate of eleven percent. The assumption agreement further provided that the Reeses would be released from all further liability on the loan assumed by the Brunos. Thereafter, the Brunos made payments to First Federal on the assumed loan at the eleven percent interest. The Brunos con-tinued paying on the assumption agreement for some three years, and then in August, 1984, filed this lawsuit. The Brunos alleged that the mechanism First Federal used to obtain the Brunos' consent to an increased interest rate, namely threatening to invoke a due-on-sale clause continued in the Reese deed of trust, was improper and that this particular due-on-sale provision has been ruled unenforceable by the Idaho Supreme Court.

In their action, the Brunos sought a return of all assumption fees and increased payments of interest paid by themselves and by all members of a purported class of borrowers who had entered into the same type of transaction with the defendant. On November 12, 1985, the district court entered an order denying class certification.

On motion by First Federal for summary judgment, the district court entered the following decision.[1]

"In resolving the issues posed, the Court initially notes that the Idaho Supreme Court has ruled that due-on-sale clauses in general are not restraints on alienation, unconscionable or against public policy. *Lake v. Equitable Savings & Loan Association*, 105 Idaho 923, 674 P.2d 419 (1983). In so holding, the *Lake* court expressly declined to follow the California rule established in *Wellenkamp v. Bank of America*, 21 Cal.3d 943 [148 Cal.Rptr. 379], 582 P.2d 970 (1978), that all such clauses were unenforceable unless the lender could show that enforcement of the clause was necessary to protect the lender against impairment of its security.

"Shortly after *Lake* was decided, the Idaho Supreme Court handed down *O'Boskey v. First Federal Savings & Loan Assoc.*, 106 Idaho 339, 678 P.2d 1112 (1984). There, the court interpreted a due-on-sale clause identical to the contractual provision in the Reese deed of trust at issue here. Notwithstanding the decision in *Lake*, that such provisions are not void, invalid or against policy, the court in *O'Boskey* held

---

1. In quoting the district court's decision, we have made minor typographical corrections throughout, and have omitted citations con-tained in the court's decision referring to portions of the record.

that the due-on-sale clause there, as a matter of contract, required a predicate showing that the security of the deed of trust would be impaired.

"The plaintiffs point to *O'Boskey* and argue that not only is the *O'Boskey* case res judicata of the questions presented in the instant lawsuit but also that United First had a duty to disclose to the Brunos the existence of the *O'Boskey* litigation. At this point it is necessary to discuss the *O'Boskey* case in some detail.

"The *O'Boskey* case was filed in the Fourth Judicial District in 1980. In that lawsuit, the O'Boskeys as prospective buyers of real estate contracted with First Federal (the same entity and defendant that contracted with the Brunos) for a purchase money real estate loan. The O'Boskey/First Federal loan agreement was secured by a deed of trust containing a due-on-sale clause.[2]

"Thereafter, the O'Boskeys agreed to sell the property secured by the deed of trust to Kay Kemp. While First Federal agreed to allow Kemp to assume the O'Boskeys' loan obligations, it demanded a loan origination fee and a two percent increase in the interest rate. Notwithstanding First Federal's demand, Kemp bought the property from the O'Boskeys, agreeing to make the loan payments but refusing to accede to First Federal's assumption fee or interest rate increase. When First Federal attempted to exercise the due-on-sale clause and served notice of acceleration, both the O'Boskeys and Kemp joined as plaintiffs in a declaratory judgment action. In the O'Boskey/Kemp transaction, there was no assumption agreement executed between the parties and First Federal.

"On February 26, 1981, District Judge Gerald Schroeder entered an order in the *O'Boskey* case enjoining First Federal from continuing foreclosure proceedings under the deed of trust with respect to the O'Boskey/Kemp transaction. Thereafter, on September 1, 1981, Judge Schroeder granted the O'Boskeys and Kemp summary judgment to the extent that First Federal could not exercise the due-on-sale clause absent a showing that the security would be impaired by allowing Kemp to assume the loan obligations. Judge Schroeder's decision was subsequently affirmed on appeal. *O'Boskey v. First Federal Savings & Loan Association*, 106 Idaho 339, 678 P.2d 1112 (1984).

"The question at bar is quite different from *O'Boskey*. There, the issue centered on the enforceability of the due-on-sale clause itself. Contrasted with the situation in *O'Boskey*, the issue in the instant lawsuit focuses on the validity of the assumption agreement. While it is true that the due-on-sale clauses in both *O'Boskey* and the present lawsuit are identical, that factual similarity is of no moment.

"The defendant concedes that the due-on-sale clause contained in the Reese deed of trust might have been unenforceable under the *O'Boskey* decision. However, the parties never reached that confrontation. Instead, a new agreement was signed by the Brunos, the Reeses, and First Federal which operated to release the Reeses and substitute the Brunos as borrowers, impose the stated assumption fee, and re-amortize the loan balance at an increased interest rate. This assumption agreement was a complete novation[3] of the prior contractual agreements between First Federal and

[2.] At this point, the district court observed by footnote that:

> The due-on-sale clauses in both the O'Boskey and Reese deed of trust were identical. In pertinent part they read as follows:
> "To protect the security of this Deed of Trust, Grantor agrees:
>  ....
> 2. In the event the herein described property or any part thereof, or any interest therein is sold, agreed to be sold, conveyed or alienated by the trustor or by operation of law or otherwise, all obligations secured by this

> instrument, irrespective of the maturity dates expressed therein, at the option of the holder hereof and without demand or notice shall immediately become due and payable."

[3.] A novation has been characterized as a species of accord and satisfaction, consisting of two stipulations: first, to extinguish an existing obligation and, second, to substitute a new one in place of the original. *Harris v. Wildcat Corporation*, 97 Idaho 884, 886, 556 P.2d 67, 69 (1976), following *Wheeler v. Wardell*, 173 Va. 168, 3 S.E.2d 377 (1939).

the Reeses, and became the controlling agreement between First Federal and the Brunos.

"The relevant inquiry under the facts presented is not whether the due-on-sale clause between First Federal and Reese can be resurrected and now be declared unenforceable, but rather the analysis must be confined to an examination of the new assumption agreement. This is not an *O'Boskey* case where the buyer expressly refused to agree to higher interest rate and the buyer and the seller joined in an action challenging the lender's conduct. Nor is this case similar to *Lake v. Equitable Savings & Loan Association, supra,* where the buyer and seller agreed to the increased rate of interest under protest and then brought a declaratory judgment action attacking the due-on-sale clause. Both *O'Boskey* and *Lake* are inapposite and not controlling of the issues before the Court.

"In the instant case, while the plaintiffs were no doubt unhappy with First Federal's demand for an increase in interest, they did not challenge the defendant's actions as did the plaintiffs in *O'Boskey* and *Lake.* While the plaintiffs contend they were given no choice but to acquiesce in the defendant's demands, the fact remains that they did have a choice—they could have refused to agree to First Federal's terms—and proceeded without agreement as the parties did in *O'Boskey,* or agreed under protest as the parties did in *Lake,* or they could have abandoned the deal and looked elsewhere for more favorable terms. Instead of rejecting the defendant's offer the plaintiffs willingly consummated their real estate transaction with the Reeses and entered into the assumption agreement, continuing to pay thereon for some three years. In exchange for the promises of the Brunos, First Federal released the Reeses from their obligations. A novation occurred wherein the Brunos "stepped into the shoes" of the Reeses and First Federal henceforth looked exclusively to the Brunos to satisfy the loan obligations.

"Under these set of facts the Court need not go beyond the face of the assumption agreement itself in determining the validity of the agreement. The record is clear that the Brunos knew that the defendant was demanding increased interest as a condition to allowing the Brunos to assume the Reese obligations. The Brunos knew or should have known that First Federal was making such a demand pursuant to the due-on-sale clause of the Reese deed of trust. While Sharon Bruno alleges that she requested First Federal officials, at the time of signing the assumption agreement, to provide her with a copy of the Reese deed of trust and note and that her request was denied on the basis that the lender did not keep these documents in that particular building, there is no showing that the Brunos were deceived in this respect by the defendant or that they would not have signed the assumption agreement had they seen the Reese deed of trust. The evidence points merely to the fact that Mrs. Bruno wished to have a copy of the Reese deed of trust for her records and that she was content in having First Federal forward a copy to her later. Indeed, Sharon Bruno admits that she did not ask either the Reeses or her real estate agent to provide her with a copy of the Reese deed of trust and that she was aware of where she could go to view the papers as filed public documents affecting title to real estate. The facts further show that the Brunos read the assumption agreement before they signed it. There is simply no basis on this record to show First Federal sought to hide any facts concerning the Brunos' rights, obligations and duties under the assumption agreement. The Brunos do not attack the assumption agreement directly. It is only through a challenge to the due-on-sale clause that the Brunos allege the assumption agreement must fall. Therefore, the Court holds that the assumption agreement was valid and enforceable. Plaintiffs' contention that the due-on-sale clause in the Reese deed of trust might have been unenforceable if challenged does not present a legal basis for setting aside or attempting to refashion the assumption contract agreed to by all parties."

We agree with the analysis and determination made by the district court.

■ Simply put, the Reese–First Federal relationship was established and controlled by the loan agreement made between Reese and First Federal. Reese is not contending that First Federal has breached that agreement. The relationship between the Brunos and First Federal was established and controlled by the assumption agreement, which is essentially a new loan agreement entered into between the Brunos and First Federal. The Brunos, not being a party to the Reese–First Federal loan agreement, cannot assert the rights which the Reeses have refused to assert in this action. As the district court held, any claim which the Brunos have against First Federal must be based upon their own agreement with First Federal, the assumption agreement. The Brunos were not a party to the Reese–First Federal loan, and that obligation was no longer extant after Brunos obtained their own loan from First Federal and the Reeses' loan obligation was discharged.

■ The terms offered by First Federal in the loan made to the Brunos were acceptable to the Brunos; otherwise the loan arrangement may not have closed (which would then have given rise to the possibility of an *O'Boskey*—type action). However, once the assumption agreement was consummated, the Reeses were out of the picture, their obligation with First Federal was discharged, and no rights thereunder remained for enforcement. The Brunos, who were not parties to the Reese–First Federal loan transaction, did not acquire any rights against First Federal except those resulting from the negotiation of their own loan assumption agreement with First Federal. Accordingly, we affirm the summary judgment entered by the district court in favor of the respondent.

The judgment is affirmed. Costs to respondent. No attorney fees awarded.

BAKES, J., and McFADDEN, J. pro tem., concur.

WARD, J. pro tem., sat but died before issuance of the opinion.

BAKES, Justice, concurring specially:

I concur in the majority opinion which affirms the trial court's decision that the Brunos in this case have no cause of action against First Federal. At first glance this case looks similar to our recent case of *O'Boskey v. First Federal Savings & Loan Ass'n*, 106 Idaho 339, 678 P.2d 1112 (1984). The note and deed of trust involved in this case is the same as that involved in *O'Boskey*. However, the circumstances are different.

In *O'Boskey*, the owner of the land in question, O'Boskey, entered into a sale agreement with one Kemp who, pursuant to the sale agreement, assumed the obligation under O'Boskey's note and deed of trust (except the higher interest rate demanded by First Federal). When the purchaser Kemp refused to pay an additional 2% interest increase over the amount set out in O'Boskey's note and deed of trust, together with a loan origination fee, First Federal served notice of acceleration pursuant to the due on sale clause and demanded payment of the entire principal and interest remaining due on the loan. When no payment was forthcoming, First Federal gave notice of a trustee's sale based on the due on sale clause. This Court in *O'Boskey*, while acknowledging that under *Lake v. Equitable Savings & Loan Ass'n*, 105 Idaho 923, 674 P.2d 419 (1983), "a due-on-sale clause in a deed of trust is not an unreasonable restraint on the alienation of property and is enforceable according to its terms and conditions," held that the wording of the particular due on sale clause in *O'Boskey* "itself limits the due-on-sale clause to those cases necessary to protect the security." 106 Idaho at 341, 678 P.2d at 1114. Accordingly, this Court affirmed the trial court's conclusion "that the defendant cannot invoke the due on sale clause unless it shows that the transfer will impair its security." 106 Idaho at 341, 678 P.2d at 1114.

This case differs from *O'Boskey* in that here First Federal has not demanded the entire principal and interest due under the note and deed of trust which it entered into with the Reeses, Brunos' predecessors in

interest. Nor has First Federal invoked the notice and sale provision of the deed of trust. Rather, First Federal has merely been accepting the payments voluntarily made to it by the Brunos pursuant to the assumption agreement.

The Brunos, rather, are seeking to recover a portion of the interest which they have paid to First Federal pursuant to the assumption agreement which they entered into with First Federal. In that agreement they agreed to assume the liabilities of the Reeses under their note and deed of trust, and further agreed to pay interest at a rate 2% higher than the Reese note had provided for. The only contractual arrangement which the Brunos have with First Federal is the assumption agreement. That agreement establishes the contractual rights and obligations between the Brunos and First Federal. Unlike the *O'Boskey* case in which First Federal was making demands and taking actions which were contrary to its written obligation with the O'Boskeys, in this case First Federal is not making any demands or taking any action which is inconsistent with its written agreement with the Brunos. It is the Brunos who are asserting a claim in this lawsuit inconsistent with their only written agreement with First Federal, the assumption agreement. The Brunos are contending that they are not obligated to pay the 11% interest which they agreed to pay in paragraph 2 of their assumption agreement with First Federal. They argue that they are only required to pay the 9% interest contained in the agreement which First Federal had with Brunos' predecessors in interest, the Reeses. Thus, this case is factually quite different from and not controlled by our decision in *O'Boskey*.

If the Reeses had brought this action contending that First Federal was threatening to assert its due on sale clause if the Reeses concluded a sale to the Brunos without the Brunos entering into an assumption agreement and agreeing to pay a higher rate of interest, then the Reeses would have had a cause of action against First Federal which would have been identical to that claimed in the *O'Boskey* case. However, the Reeses have declined to join in any claim against First Federal in this action.

The record reflects that the Brunos, who were conversant with real estate financing and due on sale clauses, entered into the assumption agreement voluntarily, knowing that the assumption agreement called for an 11% interest rate, 2% higher than the Reese note called for. After making payments pursuant to that assumption agreement for three years, they brought this action.

The Brunos' contractual rights with First Federal are fixed by the assumption agreement, not by the agreement which the Reeses had with First Federal. The Brunos have neither alleged nor proved any breach of the assumption agreement by First Federal. The district court held that any claim which the Brunos have against First Federal must be based upon their own agreement with First Federal, the assumption agreement. The majority opinion correctly concludes that "the Brunos, not being a party of the Reese–First Federal loan agreement, cannot assert the rights which the Reeses have refused to assert in this action." Since there is no allegation or proof that First Federal has breached its written agreement with the Brunos, the district court correctly entered summary judgment in favor of respondent First Federal.

BISTLINE, Justice, dissenting.

Were one in a mood for philosophizing, here is a case where one might easily come up with the novel ideal of occasionally submitting it to a given law school class. Discussions of the law of novation will certainly take place there more often than in the Supreme Court. Other than for participating in *Harris v. Wildcat Corp.*, 97 Idaho 884, 556 P.2d 67 (1976), where Justice Shepard defined the law in this area, my previous exposure to it was at the College of Law at the University of Idaho.

## PART I

The Court's majority opinion for the main part simply is an adoption of the

district court's written decision in passing on the defendant's motion for summary judgment. The majority apparently proceeds on the notion that the district court is extremely learned in that area of the law, which I say because I cannot remember that this Court in this case as an assembled collegiate body has collectively reviewed our various recollections and understandings of the law of novation. What I have just observed is, of course, self-evident from a reading of the majority opinion. Judge McKee ruled that he was looking at a three-party transaction which he concluded was "a complete novation." Judge Walters and Justices McFadden and Bakes are content to accept that determination, notwithstanding that Judge McKee made it abundantly clear in his written decision that the agreement in front of him was, and it is so titled, an "ASSUMPTION AGREEMENT" in which the word "novation" nowhere appears. The Agreement is a printed form which obviously was drafted by experienced personnel of the Association. The readily discernible purpose was to have available a document which would very, very well serve United First Federal's purposes in increasing its interest rates where a secured property was being sold to a new purchaser.

The primary issue on the appeal is the Bruno contention that Judge McKee erred in his conclusion that the three party Assumption Agreement was "a complete novation." He added thereto that he found the *Assumption Agreement valid and enforceable.* Judge Walters, in his writing for the majority, has expanded that concept in stating that the Assumption Agreement "is *essentially a new loan agreement* entered into between the Brunos and First Federal." (Majority Op., p. 1108, 772 P.2d at 1202). If it is a *new* loan agreement— which it certainly may be—it is in essence only, and does not amount to a novation. But, where is the Bruno note, and where is the Bruno trust deed? And, whatever became of the escrowed trust deed and promissory note which represented the Reese–United First Federal loan transaction?

Judge Walters, after declaring that this Assumption Agreement is aught but a two-party agreement of the Brunos and United First Federal, immediately follows up with the naked assertion, wholly unsupported by any citation of authority, that "The Brunos, not being a party to the Reese–First Federal loan agreement, cannot assert the right which the Reeses have refused to assert in this action." *Id.* That so-called "right" is not further identified. On its face the statement is ludicrous. By signing the Assumption Agreement the Brunos became saddled with the same provisions of the trust deed and the same debt evidenced by the same promissory note which documented the transaction between Reeses and United First Federal, BUT, in addition, and what this law suit is all about, at a much increased interest rate.

The contractual arrangement between the Reeses and United First Federal is documented in the appeal record. Nothing is left to recollection and oral testimony. The Partons were the original borrowers from United First Federal, executing in 1977 the trust deed in question which secured their note in the amount of $66,600. The Partons in turn sold to the Reeses. The Reeses had assumed the then unpaid obligation of the Partons' note and agreed to be bound by the trust deed obligations. United First Federal did not extract from the Reeses an Assumption Agreement requiring Reeses to agree to an increased interest rate in the Parton note, the obligations of which they assumed.

This is what is called, in beginning to address the purported novation issue, the pre-existing valid obligation, or, otherwise worded, the "old" contractual obligation of the Reeses to United First Federal. The obligation to pay the note would fall on the Reeses.

Now, what happened when the supposed novation occurred? Was the escrowed note cancelled and the escrowed release of the Parton trust deed surrendered to the Reeses? No. The "old" debt secured by the "old" trust deed remained very much in existence. Simply put, as to the note, it was a substitution of one debt for another. As Judge McKee said as to the ensuing transaction where it was Reeses out and

Brunos in, "the Brunos 'stepped into the shoes' of the Reeses." True enough, they did, but only to an extent. They did not become indebted to United First Federal by executing their own note in its favor, or executing to it a trust deed, but rather by signing the Assumption Agreement whereby they (1) assumed the Brunos' liability to United First Federal, which was to comply with the provisions of the escrowed trust deed which required monthly payments on the escrowed note, (2) agreeing to be bound by all of the provisions of the 1977 trust deed, and (3) agreeing that the interest rate would be boosted 2 percent. At the same time United First Federal, in executing the Assumption Agreement did release the Reeses from any further liability on the note, but only on the note.[1] And, absolutely contrary to Judge McKee's views, the Brunos did not step into the Reese shoes. The Reeses wore a size 9 percent shoe, and the Brunos were by United First Federal fitted to a size 11 percent shoe.

A trust deed is a deed in trust—but first all of it *is* a deed and the use of the word "grant" raises the covenants or warranties of I.C. § 55–612—which are implied against the grantor in favor of the grantee. Where the named grantee is a trustee, the covenants and warranties inure to and for the benefit of the *cestui que trust*, in this trust deed designated as the beneficiary, namely United First Federal. In addition to assuming liability for the note at the increased rate, other obligations of the trust deed were relative to protecting the security of the trust deed, such as to pay taxes without allowing delinquency, maintaining fire insurance, etc.

Totally ignored by Judge McKee, and in turn Judge Walters and those who join his opinion, is paragraph 4 of the Assumption Agreement:

4. Anything herein to the contrary notwithstanding, *this Agreement shall not affect or impair any warranty of title* heretofore *made by the Borrower which warranty of title shall remain in force and inure to the benefit of the Association* and any insurer of title *or the lien of the foregoing* mortgage or *deed of trust.*

Where the Assumption Agreement did not release the Reeses from warranty of title claims, that failure precluded a novation. The Brunos were aware of this and on receipt of Judge McKee's startling pronouncement that the whole case hinged on the novation issue which he had concocted and interjected, immediately responded by providing Judge McKee with citations of precedential case law that should have convinced him otherwise,[2] and in particular precedential Idaho case law:

In the process of effecting a novation, the parties accepting new or different obligations must do so knowingly and intentionally. *Heckman v. Boise Valley Livestock Commission Company,* 92 Idaho 862, 452 P.2d 359 (1969).

\* \* \* \* \* \*

A novation results when an accord and satisfaction is reached by substitution of a new agreement or performance in place of the performance or compromise of the original obligation. Thus, novation is a species of accord and satisfaction. 1 C.J. S. Accord and Satisfaction § 5, p. 465; *Wheeler v. Wardell,* 173 Va. 168, 3 S.E. 2d 377 (1939). It is stated in *Wheeler v. Wardell,* supra, that novation is a contract consisting of two stipulations; first, to extinguish an existing obligation and, secondly, to substitute a new one in place of the original. The court stated:

---

1. The Assumption Agreement contains this recital:

WHEREAS, Borrower has sold or is about to sell the above described property to the Purchaser subject to the foregoing mortgage or deed of trust and the Borrower and the Purchaser have requested the Association to approve the sale and to substitute the Purchaser for the Borrower as obligor on the note secured thereby, and to release the Borrower from further liability thereon, which

the Association has agreed to do on the following terms and conditions.
The first paragraph of the Assumption Agreement identifies Borrower as the Reeses, and Purchaser as the Brunos. The Association is identified as United First Federal Savings & Loan Association.

2. The Brunos' motion for reconsideration was denied without a memorandum opinion. Clerk's Record, p. 378.

Every novation embraces, necessarily, an accord and satisfaction; the principle distinguishing feature between them being that *A NOVATION IMPLIES THE EXTINGUISHMENT OF AN* existing *DEBT BY THE PARTIES THERETO AND* its transition *INTO A NEW EXISTENCE BETWEEN THE SAME OR DIFFERENT PARTIES,* whereas an 'accord and satisfaction' relates solely to the extinguishment of the debt or obligation.

To establish an accord and satisfaction the parties accepting a new or different obligation must do so knowingly and intentionally. *Heckman v. Boise Valley Livestock Comm'n Co.,* 92 Idaho 862, 452 P.2d 359 (1969); *Fairchild v. Mathews,* 91 Idaho 1, 415 P.2d 43 (1966); *Allen Steel Supply Co., v. Bradley,* 89 Idaho 29, 402 P.2d 394 (1965).

*Harris v. Wildcat Corporation,* 97 Idaho 884, 556 P.2d 67 (1976). Clerk's Record, p. 360 (emphasis in original). Justice Shepard authored the *Harris v. Wildcat* opinion for a unanimous court. Unfortunately he was not available when argument in this case was presented, but that which he has written is carried in the Idaho Reports. Exactly how one prevails upon the majority to consider the same is not known.

Not only does the specific retention of the Reeses' potential liability for breach of warranty defeat the finding of a complete novation, but there was no extinguishment of the original debt.

Counsel representing the Brunos might just as well have saved his time and energy in furnishing this Court with the case of *Miami National Bank v. Forecast Construction Corporation,* 366 So.2d 1202 (Fla.Dist.Ct.App.1979):

> [T]here was no evidence of any intent on the part of the Bank to extinguish the original indebtedness. *The original note was never cancelled.* Thus, the evidence presented failed to establish this essential element of a novation agreement.

366 So.2d at 1204 (emphasis added).

Counsel also provided us with additional citations from other jurisdictions to the same effect as our Idaho case law: *Siegler v. Telco Leasing, Inc.,* 593 S.W.2d 850 (Tex. Civ.App.1980); and *Davenport v. Dickson,* 211 Kan. 306, 507 P.2d 301 (1973). These cases require that the old debt must be extinguished. *See also* 58 Am.Jur.2d 535, § 21 Novations.

A case from the District of Columbia provides the law of novation so concisely that its statement is that utilized in Black's Law Dictionary:

> A novation is the substitution by mutual agreement of a new debt or obligation for an existing one, which is thereby extinguished. The essentials are: (1) a previous valid debt; (2) extinguishment of the old contract; (3) agreement of all parties to a new contract; (4) validity of a new one.

*Blyther v. Pentagon Federal Credit Union,* 182 A.2d 892, 894 (D.C.1962).

Under a true novation, *the prior note and trust deed would have been cancelled.* The Brunos in turn would have executed *their* note and trust deed in favor of United First Federal. United First Federal, however, knew what it was doing when it captioned its printed form "Assumption Agreement." It wanted to utilize a document whereby the debt would be assumed, it wanted to collect a fee, it wanted to hike the interest rate, and *it wanted to keep its original security in place.* The 1977 trust deed was recorded, and assuming that this opinion is written for readers versed in such matters, there is no need for elaboration on that score. The Brunos *assumed* liability to pay the debt of another, as required by United First Federal. Their promise to pay that debt was in writing, I.C. § 9–505(2), and there was consideration. Beyond question it was a valid assumption agreement, other than for extracting an increased interest rate, but it was not a novation. Counsel for the Brunos are entirely correct in their assertion that:

> The record is clear, no novation exists. It is elemental law that a pre-existing obligation must be extinguished or there

is no novation. In this case, the original note and deed of trust still exist to this day.... *A mere modification obligation will not constitute a novation. If anything remains of the original obligation, a novation is prevented.*

Appellant's Reply Brief, p. 4 (emphasis added). A modification? Yes, indeed. A modification of the interest rate validly obtained? That is the issue.

During the course of proceedings United First Federal provided the trial judge with two extensive briefs. The first brief of 27 pages was a memorandum in support of its motion TO STRIP COMPLAINT OF CLASS ALLEGATIONS. Nowhere in that brief did United First Federal make any claim that the Assumption Agreement was a novation. In all of those 27 pages the word "novation" does not once appear. The argument portion of that brief opened as follows:

> The heart of this action is the efficacy of the *Modification Agreements* entered into by ... Albert and Sharon Bruno, the Plaintiffs in this action, entered into a *Modification Agreement* with their seller and United First Federal on February 20, 1981, and began making payments to United First Federal based upon the interest rates specified in the *Modification Agreement* before Judge Schroeder's Opinion was rendered and before that Opinion was affirmed by the Idaho Supreme Court.

True, the Assumption Agreement did modify the interest rates, from 9 percent to 11 percent. It was indeed an assumption agreement. And, recognizing the Assumption Agreement for what it was and what it accomplished, that brief twenty-five times or more referred to the Assumption Agreement as the "Modification Agreement."

The 28–page brief which United First Federal filed in the trial court in support of its motion for summary judgment of dismissal consistently refers to United First Federal's Assumption Agreement as—of all things—the Assumption Agreement.

The interested reader who examines those 28 pages, no matter how closely or how often, will not find anywhere therein the word "novation."

Judge McKee's conclusion that the Assumption Agreement operated to that effect, was one which he reached *sua sponte*, and by *ipse dixit* declaration, unsupported by any citation of authority whatever,[3] and entirely without analysis of any kind, other than to note that the Brunos, with their size 11 percent feet stepped into the size 9 percent shoes which the Reeses had been wearing since they earlier had assumed the obligation of the Parton note. Enough has been said herein to establish that this transaction was *not* the "complete novation" which Judge McKee declared it to be. It is true that the Brunos did in writing agree to become liable for the note. It is equally true that United First Federal did release the Reeses from their obligation of liability on the note. Equally true, and giving rise to this law suit, was it that United First Federal, using the leverage of the due-on-sale clause, extracted the Brunos' agreement to pay an additional 2 percent interest more than the assumed note called for.

It is *not true* that United First Federal released the Reeses, or anyone, from obligation on the warranties of the trust deed. Just the opposite is true. The terms of the Assumption Agreement were structured so as to specifically continue that obligation. A little repetition from page 1106, 772 P.2d at 1200, *supra*, is in order, and, apparently necessary:

> 4. Anything herein to the contrary notwithstanding, *this Agreement shall not affect or impair any warranty of title* heretofore *made by the Borrower which warranty of title shall remain in force and inure to the benefit of the Association* and any insurer of title *or the lien of the foregoing* mortgage or *deed of trust.*

With, or even without, the additional factor of no extinguishment of the original Bor-

**3.** The opinion authored by Judge Walters leaves a contrary intimation that an Idaho case was cited, as witnessed by its footnote 3, inserted on page 1106, 772 P.2d at 1200, of the majority slip opinion. That footnote does not appear in Judge McKee's decision.

rower's debt (Reeses'), there was not, by any definition found in the law of novation, a "complete novation."

United First Federal bears some responsibility for leading Judge McKee astray relative to Reeses' continuing liability on the warranties of the trust deed. It urged upon Judge McKee:

> Thus, the Brunos and Reeses entered into an assumption agreement whereby they expressly agreed to an increase in the interest rate in exchange for United First's release of the Reeses *from any future liability* and approval of the assumption.

Vol IV, R., p. 11 (emphasis supplied).

> Pursuant to that same assumption agreement, *United First released the Reeses from any future liability* and agreed to allow the assumption and conduct all work necessary to process that assumption.

Vol IV, R., p. 14 (emphasis supplied).

It appears that the district court sidetracked itself in stating the issue:

> The question at bar is quite different from *O'Boskey*. There, the issue centered on the enforceability of the due-on-sale clause itself. Contrasted with the situation in *O'Boskey*, the issue in the instant lawsuit focuses on the validity of the assumption agreement. While it is true that the due-on-clauses in both *O'Boskey* and the present lawsuit are identical, that factual similarity is of no moment.

Vol IV, R., p. 313. It would become of no moment only on the predicate of converting the Assumption Agreement into an agreement of novation, *assuming* again that it created a novation.

United First Federal also appears to have further sidetracked the district court by the language of a footnote inserted in its memorandum brief supporting its motion for summary judgment:

> As discussed at the time of hearing on the motion for class certification and throughout the briefing filed by United First with regard to that motion, *it is admitted that the due-on-sale clause contained in the O'Boskey form of deed of trust has been held to be unenforceable by the Idaho Supreme Court.* However, that determination is only a starting point in determining whether United First has any liability in this case. Unlike the *O'Boskey* decision, the Brunos in this case entered into an assumption agreement. *The dispositive issue in this case relates to the enforceability of that assumption agreement and not the enforceability of the due-on-sale provision* contained in the O'Boskey form of deed of trust.

Vol IV, R., p. 20.

Judge McKee's statement as to the issue in *O'Boskey*, *i.e.*, enforceability of the due-on-sale clause, *was 100 percent sound. But it was not correct* to identify the issue in this case as being "the validity of the assumption agreement." The Bruno complaint simply does not raise that issue. Anyone perusing the file will find it clearly appearing that the Brunos and the Reeses joined together with United First Federal in executing the Assumption Agreement. That Agreement stands for what it is on its face, the Reeses being absolved from liability on the note, the Brunos assuming that debt liability, and United First Federal joining in and consenting to the assumption because it obtained compliance with its demands, namely a 2 percent jump in the interest rate on the note, plus payment of an assumption fee.

The Brunos pleaded no attack on the Assumption Agreement. Its validity was not brought under challenge. It is not under challenge in this Court. The issue is the manner and means by which it was obtained, *i.e.*, as in *O'Boskey*, did the *Trust Deed* confer upon United First Federal the right to threaten to exercise its due-on-sale clause as a means of extracting the agreement to pay interest on the note an increased rate. The Bruno claim is for "money judgment" *i.e.*, the restitution of extra amounts of money they have paid and will yet pay over the life of the note. Their claim is predicated upon the same basic contention raised in *O'Boskey*, namely that *absent any impairment to the security which might arise by reason of the trans-*

*fer of the real property security from Reeses to Brunos, United First Federal possessed no right to threaten acceleration of the note and foreclosure of the trust deed.* The affidavit of Sharon Bruno, dated January 25, 1985, is part of the appeal record. She states therein under oath:

That at the time we purchased the above-referenced property United First Federal Savings & Loan *required* that the interest rate be raised from 9 percent per annum to 11 percent per annum and that an assumption fee of $638.18 be paid. The increased interest rate of 11 percent interest resulted in a new monthly payment of $622.10, *an increase of $90.61 per month.* See Assumption Agreement attached hereto as Exhibit D.

At the time we purchased this property from Lotwick and Kathryne Reese, defendant did not advise us that the clause was the subject of litigation which brought its enforceability is not in question, and *I, as was my husband, was under the mistaken belief that the due-on clause was an enforceable contractual obligation.*

At the time of purchase of this property we agreed with the sellers, Lotwick and Kathryne Reese, to pay one-half of the assumption fee amount, the sum of $319.09. That amount was paid to defendant.

That at no time has United First Federal Savings & Loan ever alleged our purchase of the above-referenced property constituted impairment to its security under the deed of trust.

In October, 1983, I contacted United First Federal Savings & Loan regarding the interest rate they would charge to an assuming purchaser. *I was advised that the interest rate would be raised to over 14 percent if we sold our home.*

... I made demand upon United First Federal for the refund of the excess interest paid from February 20, 1981, through and including April, 1984. My demand letter is attached hereto as Exhibit B.

The text of the letter designated Exhibit B, reads:

We are aware that recent legislation restricts acceleration of our above numbered loan, since such a clause is not contained in the Deed of Trust of record. *On March 1, 1981,* we assumed this loan in the purchase of the property covered under the Deed of Trust. At that time *you required that the interest rate be increased* from 9% per annum to 11% per annum. It appears that the increase requirement was unlawful, and that the loan is fully assumable at the rate of 9% until the maturity date.

Please consider this our formal Demand for Payment and refund of the excess interest paid from March 1, 1981, through and including April 1, 1984. In addition, demand is made for interest earned on said overpayment from March 1, 1981, through and including date payment is received by me.

Please note that we will need an amended payment booklet which reflects payments of principal and interest at the lower rate of interest prior to May 1st, when the next scheduled payment is due. Thank you in advance for your attention to this matter.

Mrs. Brunos' affidavit continues:

On May 2, 1984, I received a letter from Richard A. Cummings representing United First Federal Savings & Loan, a copy of which is attached hereto as Exhibit C. *In that letter Mr. Cummings advised me that the recent Supreme Court opinion 'only applies to loans which have not yet been assumed.'* I see no reason for the distinction between the original grantors of the deed of trust and the assuming grantors as our situations are identical; the only thing having changed is the rate of interest and the requirement of an assumption fee.

The letter from Mr. Cummings to the Brunos reads as follows:

United First Federal has referred to me for reply your letter dated April 11, 1984, regarding your assumption of a loan on approximately March 1, 1981.

You have requested a refund of the difference between the rate being charged by United First Federal prior to

your assumption and the rate which you agreed to pay at the time you assumed the loan. *The Federal Home Loan Bank regulations which govern the activities of a federal savings and loan association* such as United First Federal *specifically authorize these institutions to utilize and enforce a due-on-sale clause in its lending documents. The obligations which you assumed included such a clause which required that the entire indebtedness be paid in full upon a sale of the property unless you, as the new buyer, agreed to terms satisfactory to United First Federal for extending the loan.*

In consideration of your agreement to pay 11 percent per annum, rather than 9 percent per annum, *United First Federal agreed to forego its right to demand payment of the entire balance of the loan at the time of your purchase of the property securing the loan.* Accordingly, your payment based on an 11 percent interest rate is simply the agreement you made with United First Federal at the time you assumed the existing indebtedness, and, there would appear to be no basis for refunding any portions of the money paid by you or reducing the rate applied to your loan balance in the future.

*While there has been a recent decision by the Idaho Supreme Court* that the language in some of the due-on-sale clauses utilized by United First Federal in the past require that United First Federal show that its security is impaired by reason of the sale before it can accelerate the balance due, this option only applies to loans which have not yet been assumed. Even if the language of the due-on-sale clause the subject of that action were the same language as in your Deed of Trust, *that opinion does not affect those situations where the new buyer has entered into a written assumption agreement with United First Federal agreeing to pay a specified interest rate as you have.*

Mr. Cummings' letter is, of course, after the fact—some time after the Brunos had yielded to United First Federal's demands as to what was required in order to forestall foreclosure should the Reese–Bruno transaction proceed without having the consent of United First Federal. It is not illogical to compare the Reese–Bruno circumstance with the O'Boskey–Kemp situation. In O'Boskey the parties refused to submit to the extortion, stood their ground, were able to find counsel willing to take on and tangle with United First Federal and its considerable resources, and eventually prevailed after a long, hard and expensive litigation. The Brunos were wanting to buy the Reese residence, the Reeses wanted to sell, and, as Sharon Bruno stated, both in affidavit and by deposition, the Brunos did succumb to United First Federal's threat, by entering into the Assumption Agreement whereunder they had to pay United First Federal 2 percent more interest on the escrowed note, and also pay the assumption fee.

Judge McKee's rationale in holding them without a valid claim was (1) that the Assumption Agreement was a novation, which it was not; and (2) that the Brunos, as volunteers, were possessed with a choice of viable alternatives rather than complying with United First Federal's demands. Misstating the issue by virtue of accepting United First Federal's definition thereof, Judge McKee reasoned as to the better alternatives which wiser Brunos would have selected:

In the instant case, while the plaintiffs were no doubt unhappy with First Federal's demand for an increase in interest, they did not challenge the defendant's actions as did the plaintiffs in *O'Boskey* and *Lake*. While the plaintiffs contend they were given no choice but to acquiesce in the defendant's demands, the fact remains that they did have a choice—they could have refused to agree to First Federal's terms—and proceeded without agreement as the parties did in *O'Boskey,* or agree under protest as the parties did in *Lake,* or they could have abandoned the deal and looked elsewhere for more favorable terms. Instead of rejecting the defendant's offer the plaintiffs willingly consummated their real es-

tate transaction with the Reeses and entered into the assumption agreement. Vol III, R., p. 314–315.

Judge McKee went on in his written decision to suggest that the Brunos (essentially Sharon Bruno) should have obtained the trust deed and decided for herself as to the enforceability of the due-on-sale clause:

> The record is clear that the Brunos knew that the defendant was demanding increased interest as a condition to allowing the Brunos to assume the Reese obligations. *See* Deposition of Sharon L. Bruno, pp. 54–55, 76–80 and Exhibit No. 4 attached thereto.

Vol III, R., p. 315. That statement is beyond dispute. In fact, no dispute has been raised on that issue. That testimony is as follows:

> BY MR. KURTZ: Q Handing you what's been marked as Deposition Exhibit No. 4, do you recognize that document?
>
> BY MRS. BRUNO: A Yes.
>
> Q What is that document?
>
> A This is a letter from us to Byer's Real Estate dated January the 26th. This is after we had been advised that the interest rate would be increased and that the seller would not be able to be out for closing on the 6th of February and they wanted it in writing from us for their files.
>
> Q Who wanted it in writing?
>
> A Byer's Real Estate wanted it from us.
>
> Q Pursuant to whose request did you send this letter?
>
> A Irene Cook's.
>
> Q Up to the date that you had sent this letter, had you had any conversation with any representative of United First concerning financing on this real property?
>
> A No, sir. Only in the credit check we had been requested to send copies of notes and deeds of trust that we have on other property to verify income. I don't even know if the request came from the bank directly or through Irene.
>
> Q But as of that date at least you didn't have any direct contact with any representative of United First; is that right?
>
> A As far as I know.

Exhibit 4 is a letter from Sharon Bruno to Irene Cook, the real estate agent involved. The letter states as pertinent: "Please be advised that we are aware of, and accept, that the interest rate on the loan in favor of United First Federal will be increased to 11% per annum."

Judge McKee, apparently having determined how the case would be decided, in his written decision did get around to conceding that which has been pointed out early in *this* opinion: *"The Brunos do not attack the assumption agreement directly."* Vol III, R., p. 316. But he sees them making an indirect attack, "It is only through a challenge to the due-on-sale clause that the Brunos allege the assumption agreement must fall." *Id.* This is a pure *non sequitur*, and it is also without support in the record. The Brunos have not claimed that the Assumption Agreement "must fall." They do not challenge its validity. Again, the entire thrust of their law suit is the actions of United First Federal *in using the due-on-sale clause of the Trust Deed* as a leverage tool with which to threaten the Brunos and thereby extract their agreement to accede to the demand for an increased interest rate on the note initially given to United First Federal by the Partons in 1977.

Having taken the particular tack that he did, I can understand why Judge McKee made those comments, but I do not see therein any validity. That is not as much my concern as that three members of the Court readily adopt that rationale without independently assessing the circumstances portrayed by the record.

Simply put, it is repeated that the Brunos do not contend that "the assumption agreement must fall." What they do contend is that United First Federal improperly and unconscionably took advantage of them, and in fact extorted from them the assumption fee and the 2 percent increase in interest.

There being no claim of impairment of security, United First Federal was clearly in the wrong in asserting, just as they were

in O'Boskey, that on any sale of the secured property it had the right to accelerate the debt and foreclose against the real property security. That was misrepresentation. The product of that misrepresentation was a substantial financial gain to United First Federal. The Bruno action is to make United First Federal disgorge its gain by an assessment of damages which is equal to the amount they have been gouged out of. The scenario is on a par with any ordinary misrepresentation action. The Brunos have not disaffirmed the transaction, but to the contrary affirm it and seek to recover in damages that which they were mulcted out of by a blatant misuse of a due-on-sale clause, not a due-on-sale clause attuned to changing economic conditions, but to an impairment of security provision, with there being no impairment of security nor any claim of impairment.

In *O'Boskey* Judge Schroeder very well expressed what that case and this case are all about:

A simple reading of the contract indicates that the provision is applicable to those cases in which a transfer of the property would impair the security. The authorization of a due-on-sale provision by the federal regulations is not a carte blanche to a federally chartered savings and loan to do whatever it wishes. *The regulations set forth that the rights of the parties are governed by the contract. The contract states that the provision is to protect the security of the deed of trust. The contract itself limits the due-on-sale clause to those cases necessary to protect the security.*

*O'Boskey v. First Fed. Sav. & Loan Ass'n,* 106 Idaho 339, 341, 678 P.2d 1112, 1114 (1984).

A unanimous Supreme Court said much the same, and perhaps more in its *O'Boskey I* opinion:

The due-on-sale provision is readily seen as predicating First Federal's option to accelerate the obligation of the secured note *upon a need to* protect the security. If this is not an absolute, it is at least so worded that *it could be so understood by a reasonable person.*

For certain it is not geared to economic conditions, and in particular to changing costs for the use of money. On the state of the record before him, it was readily apparent to the trial judge that money market conditions, and not protection of the security, motivated First Federal's acceleration of the note under the due-on-sale clause.

*Id.,* at 340, 678 P.2d at 1113.

If there is a distinction between the *Bruno* case and the *O'Boskey* case, it is one without a material difference. In both cases United First Federal was being called to account for what is generally recognized as consumer fraud, carefully contrived. In *O'Boskey* the legal action commenced when O'Boskeys and Mrs. Kemp challenged the scheme. In *Bruno* the legal action commenced when the Brunos were brought to the realization that they had been artfully scammed, by design. Not only that, but as was developed in further O'Boskey proceedings in that case there were other victims in the thousands. Here the number developed at the end of the case was over 4000.

Beyond any doubt, by the law of novation, there was not a novation. Insofar as Judge McKee's decision was hinged on this conclusion that he beheld a novation, it cannot stand.

### PART II

Equally so, insofar as it might be hinged on the view that the Brunos willingly and voluntarily entered into the Assumption Agreement, the decision cannot stand. There is no merit in Judge McKee's rationale that the Brunos had alternative choices. That rationale simply will not stand even mild scrutiny. The Brunos were leaving California to make their home in Boise. Their residence in California was on the market, and in fact did sell. They had funds with which to begin the purchase of a home in Boise. They found the home which they wanted, the Reese residence. The Reeses wanted to sell. A price was agreed upon. An involved broker or agent knew of the due-on-sale clause, or learned of it, perhaps, from a preliminary title re-

port. Those details are of no significance. There is no question here but that United First Federal had to be contacted because of the due-on-sale clause. No doubting either that it demanded an increase in the interest rates on the note as a condition prerequisite to its forbearance in not exercising the due-on-sale clause. There is no question but that the Brunos yielded to that demand.

There is no questioning the fact that United First Federal was at that time engaged in *O'Boskey* litigation which clearly informed United First Federal that capable attorneys were challenging United First Federal's extensive use of the due-on-sale clauses contained in its trust deed form because the exercise of that clause was not geared to and based upon an actual and provable impairment of security, nor on changing money market conditions, as in *Lake.*

It is also beyond question that the Brunos were not aware of that litigation, and also that United First Federal did not make them aware. It is also true that it is the law in Idaho that there is the right of free alienage of real property,[4] that United First Federal is a federally chartered savings and loan association, and that it is subject to the regulations of a commission which supervises the operations of such deferrally chartered associations. With the foregoing in mind, it is then in order to examine the choice of alternatives which Judge McKee found were available to the Brunos, but not utilized.

## PART II, A.

He stated that "they could have refused to agree to First Federal's terms ..." Two lines earlier he had stated, "they did not challenge the defendant's (United First Federal) actions as did the plaintiffs in O'Boskey and Lake." There is no merit in that supposed choice, although concededly it very well may have been one that Judge McKee might have made; being versed in the law, he as with any attorney, would have been at liberty to prosecute his own legal action without incurring the expense of counsel. The Brunos were not so favorably situated. Clearly, anyone who chose to "refuse and challenge" would have been ultimately involved in a law suit. What happens where a buyer and a seller enter into their own agreement without getting the consent of United First Federal?

That answer was in the books prior to Judge McKee's stating the availability of "refusing and challenging." The O'Boskeys made the challenge. United First Federal proceeded to accelerate the note and initiate a summary foreclosure action by notice. *O'Boskey* tells us what then transpired. The O'Boskeys would either see the property sold out from under them with the usual dramatic loss attendant to

---

4. Chief Justice Shepard has provided a thorough discussion of this right in *Lake v. Equitable Sav. & Loan Ass'n.,* 105 Idaho 923, 928–29, 674 P.2d 419, 424–25 (1983):

> At the bottom, the instant case reduces to a question of whether Idaho courts, exercising their equitable jurisdiction in foreclosure actions, are to be bound by the provisions of a due-on-sale clause or whether they are, depending upon the circumstances, free and able to rule that such clauses are void or voidable as a matter of public policy as being unreasonable restraints on alienation or an unconscionable advantage to a lender resulting from a contract of adhesion. Put another way, the question becomes whether that contract clause, regardless of the benefit to the lender, results in widespread and adverse consequences to the general public.

> It is clear that restraints on alienation are disfavored in the law. *Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1982); *Bellingham v. First Federal S. & L. Ass'n v. Garrison,* 87 Wash.2d 437, 553 P.2d 1090 (1976). 'A "restraint on alienation" is any provision in a trust or other instrument which, either by express terms or by implication, purports to prohibit or *penalize the use of the power of alienation.*' (Emphasis added.) *Black's Law Dictionary,* p. 1183 (5th ed. 1979). Simes and Smith define a restraint on alienation as follows:

> '[T]he expression "restrain on alienation" refers not merely to the restriction of the legal power of alienation, but also to the restriction of alienability as a practical matter. Any provision in a deed, will, contract, or other legal instrument which, if valid, would tend to impair the marketability of property, is a restrain on alienability.' Simes and Smith, *The Law of Future Interests* § 1111 (2d ed. 1956). *See also* Volkmer, "The Application of the Restraints on Alienation Doctrine to Real Property Security Interests, 58 Iowa L.Rev. 747 (1973).

foreclosure sales, or, if extremely fortunate, they might, and they did, find an attorney willing to take on United First Federal in which would turn out to be prolonged and expensive litigation. As it happened, counsel for the O'Boskeys was able to obtain a court order staying the summary foreclosure proceedings. It must be kept in mind, however, that a less capable attorney might not have succeeded. Moreover, it is not unlikely that the *O'Boskey* attorney might have been turned down had the motion for a stay order come up for disposition by another judge, one not of the same frame of mind as Judge Schroeder.

There in all likelihood would not have been an *O'Boskey* had not there been the *O'Boskey* good fortune in finding an attorney who could see that they were being mistreated, and was willing to undertake a monumental experience—a David leading the O'Boskeys into combat with a well-healed Goliath.

The *O'Boskey* litigation did not come to a close until this Court denied United First Federal's petition for a rehearing, on the second United First Federal appeal, which was June 11, 1987. That litigation started on October 22, 1980. This Court allowed United First Federal to earlier appeal from an interlocutory decision of the trial court. In and of itself that would have been costly and expensive litigation. The printing of briefs is not gratuitously provided. An attorney's time and efforts are not donated just because the cause is worthy. Then, too, there was the second appeal by United First ? :deral. These two appeals, in time, effort, and legal fees are paled standing along side the proceedings in district court. United First Federal subjected the O'Boskeys to a large number of maneuvers which had to be resisted and countered. These will be found detailed on Appendix A, appended hereto.

All told, the O'Boskeys easily may have incurred legal fees upwards of $10,000 to $15,000, or more. It may be that not many are the ordinary couples who would have selected the alternative of "challenging" United First Federal as against yielding to

the demand here made on the Brunos, which putting aside the one-time only payment of an assumption fee (something over $500 for a printed form with a few figures typed in which they will sign), requires an interest increase of approximately $90 per month on monthly payments. That equates to $3 per day to move into the home of the Brunos' desire—without the worry of litigation—which many people do not wear well. That $3 in turn reduces down to $1.50 per day per person (assuming no children). Sometimes it *is* easier, less expensive, and less worrisome to cave in, rather than stand on principle.

We also are, or at least I am, aware from the *O'Boskey* case that there were over 4000 owners of a residence property encumbered by a United First Federal trust deed who had *not* realized that they could "challenge" United First Federal's due-on-sale provision, or declined to become embroiled.

I seriously doubt that the other living members of the Court who sit in judgment on this case have paid any more attention to the realities of the circumstances than did Judge McKee. I am not critical of Judge McKee, in that in this business it is probable that any of us operating on short time are susceptible of being misled into what appears to be a mistaken judgment call. But I would be less than candid if I did not concede considerable disappointment that the others who undertook to hear and decide this case, blessed with far more time for reflection than district judges are allowed under this Court's rules, have not shown any regard for the views of Judge Ward, with whose views mine happen to coincide.

It seems to me that wholly forgotten here is that Judge McKee's decision was not rendered following a trial on the merits, but rather on a United First Federal motion for summary judgment of dismissal. I will not argue that in a trial on the merits it is possible that the trier of facts would find reasonable the hypothesis that the Brunos entered into a novation. But, as a matter of law that would not hold water.

I will not argue that a trier of fact might not find reasonable the hypothesis that the Brunos should have selected alternatives to yielding, as suggested by Judge McKee. Assuming that such could be a defense, and assuming further that it was a pleaded defense, and assuming still further that the trier of fact was made aware that over 4000 yielding United First Federal borrowing customers constituted a class of reasonably knowledgeable borrowers, it is much doubted that such a defense would prevail. But, if it did prevail, it would fall as a matter of law. The issue in this case, as in *O'Boskey*, was not what a reasonable person ready, willing, and able to buy a residence property encumbered with a due-on-sale trust deed provision would do when confronted with a demand to accede to an increased interest rate, but rather the issue is whether that particular due-on-sale clause can validly be used to accomplish that end. *O'Boskey I* was a unanimous opinion holding that it could not be so used. Essentially we have before us, as did Judge McKee, a clear case of *collateral estoppel by judgment*. Sometimes it is less formally referred to as "issue preclusion" or "res adjudicata."

Where the same issue came up before Judge McKee in the same court in which Judge Schroeder had already ruled that the due-on-sale clause had no efficacy unless an impairment of security could be demonstrated and established, Judge McKee properly should have entered upon his deliberations by beginning with the principle of law declared by Judge Schroeder, and in turn unanimously approved by this Court. Page 27 of United First Federal's brief supporting its motion for summary judgment is readily seen as being responsible for Judge McKee's settling in on the unique dispositive issue. There United First Federal stated:

> In Count Four of Plaintiff's Complaint, they allege that 'the decisions of Judge Gerald Schroeder and the Idaho Supreme Court are *res judicata* in their effect upon United First and United First is bound by such determination.' *See* Complaint, August 14, 1984, p. 8. United First agrees that the issues decided by

the Idaho Supreme Court in the *O'Boskey* case should not and, indeed, cannot be relitigated in this case. Thus, the due-on-sale clause found in the deed of trust in this case is not enforceable absent an impairment of security. However, as discussed above, the issue of the enforceability of the assumption agreement entered into by the Brunos was not the subject matter of the *O'Boskey* case. In fact, the O'Boskeys and Kemp specifically refused to enter into such an assumption agreement. *The dispositive issue in this case relates to the enforceability of that assumption agreement.*

United First Federal in this Bruno case has never asserted that it was entitled to enervate the due-on-sale cause because of any impairment of its security, nor has it ever claimed any such impairment. But it did obtain its ill-gotten monetary gains by the leverage of the due-on-sale clause.

### PART II, B.

One need not pause long in examining Judge McKee's other example of an alternative choice, *i.e.*, "or agree under protest as the parties did in *Lake*, ..." This is in reference to *Lake v. Equitable Savings & Loan Association*, 105 Idaho 923, 674 P.2d 419 (1983). Two comments will suffice. The first is to observe that the plaintiffs in *Lake* either financed litigation which left them owing a considerable amount for attorneys fees or were fortunate enough to find well-motivated counsel hoping to strike a blow for the good of the people, but, whichever being the case, ended their journey of "challenge" still beset with the virus of a due-on-sale cause should they decide to sell. That they were allowed to pursue their quest was, perhaps, as remarkable as the 3–2 opinion against them, being as it was pinioned on the philosophy that the public weal is served by the purpose that such clauses in mortgages make them more salable to a higher echelon of even better endowed money lenders. The second comment is simply that although there is recognized in Idaho's *taxing* law some legal significance to paying under protest in order to be eligible for the bringing of

an action to recover for an unjust assessment, there does not seem to be a similar procedure in the commercial world.

The "paying under protest" language in the *Lake* case had absolutely no effect one way or the other—a fact which Judge McKee did not know. Not knowing, he was nevertheless content, as are Justices McFadden and Bakes and Judge Walters, to adopt the view that there is such a right in the money-lending world. I am in the class of the uninformed. What I do know, however, about the *Lake* case is that in district court proceedings the parties at an early stage entered into a lengthy stipulation which made the court's work easier. Included therein were the following:

28. No employee or agent of Equitable was present at the closing. *Equitable does not agree to the Lakes' execution of said documents 'under protest.'* Neither the manner nor mode of the execution of said documents is an issue in this case.

29. The terms and conditions in Paragraph 11 of the Deed of Trust, Exhibit 'A,' are clear and unambiguous.

30. The parties agree that the Lakes are credit-worthy and that there is no impairment of Equitable Savings and Loan Association's security for repayment of its loan by reason of the assumption.

31. In Idaho during December of 1979, Equitable implemented a policy of requiring an interest rate increase on loan assumptions up to but not to exceed 2% per annum but ½% below prevailing lending market rates due to current financial market conditions.

32. Equitable Savings and Loan Association pursuant to Section 11 of the Deed of Trust, based its decision to raise the interest rate on the loan which the Lakes assumed on the prevailing financial market conditions, inflation rate and economic trends.

*Lake v. Equitable Sav. & Loan Ass'n.,* Clerk's Record, p. 38. So much for the signing of that Assumption Agreement "under protest." Obviously, as witnessed by a 3–2 Supreme Court decision, Equitable was not certain of its ground, and wisely decided to forego the initiation of a summary foreclosure.

This Court's opinion in *Lake* is observed as not providing the reader with the content of the due-on-sale clause, which is now remedied:

11. Transfer of Property; Assumption; Conditions.

a. This loan is personal to Grantor and not assignable. In making it, Beneficiary as relied on Grantor's credit, Grantor's interest in the Trust Property, and financial market conditions at the time this loan is made. If Grantor transfers or contracts to transfer title to or possession of all or part of the Trust Property by deed, contract of sale, lease or similar agreement, Beneficiary may declare the entire balance of this loan immediately due and payable.

b. Beneficiary will waive its right under subparagraph 11.a if the following conditions are met: (1) The credit of the third party is satisfactory to Beneficiary; and (2) the third party shall assume full personal liability for payment and performance of the note, Deed of Trust and other security instruments; and (3) a charge for administrative costs is paid to Beneficiary; and (4) if required by Beneficiary, either the interest rate of the secured loan is increased by not more than two (2%) percent, or Beneficiary is paid a lump sum compensation not to exceed two (2%) percent of the loan balance at the time of assumption.

c. Any increase in the interest rate shall entitle Beneficiary to increase the monthly payments so the secured debt will be paid in full by the maturity date of this Deed of Trust.

d. Assumption does *not* release Grantor or any successor in interest from personal liability for payment and performance of the terms and conditions of this loan.

The costly alternative choice which the Lakes pursued to their detriment can hardly be said to have been a choice that many people of prudence would have made. But such was not at all the issue. The issue was whether a district court, responding to

a motion for summary judgment, is possessed of authority to decide a factual question, which first of all accepts the untenable premise that it mounts to the level of a defense in an action to recover monies inequitably obtained. Again I say that the issue here was, absent any impairment of security, could United First Federal use the due-on-sale clause as a lever whereby it could exact an increase in the interest rate of the promissory note.

The final alternative suggested by Justice McKee, and in turn endorsed by today's majority is two-fold, (1) that they could have "abandoned the deal," and (2) they could have looked elsewhere for more favorable terms. As to (2), whether more favorable terms were or were not available was not an issue of fact triable to a district court on a motion for summary judgment. As to (1), the deal was made, the terms obviously were satisfactory to a willing seller and a willing buyer, so why should they not stand on principle, fly into the fray, and let the devil take the hindmost. The answer is easy. Costly litigation, and the distress which come from being embroiled in litigation.

Most American couples engaged in buying a home of their desire, and needing a home to live in, can be expected to succumb to a small level of piracy. I can think of very few non-legal persons who wouldn't. In that I may be as wrong as I find Judge McKee and today's majority. No matter that, expressions as to what most people might do or should do are just that, expressions. Law suits are decided by the resolution of questions of fact and issues of law.

### PART III

The Brunos demanded a jury trial contemporaneously with the filing of their Complaint. The Brunos were not allowed to try issues of fact to a jury, and instead, as aforesaid, the judge decided the case, utilizing whimsied theories rather than settled principles of law.

### PART IV

The Brunos also are found to be correct in another little-discussed aspect of the case.

Judge Walters in authoring the majority opinion has stood pat on the same for quite some time while awaiting this continuation of my effort. There is one statement in that opinion with which I have always agreed, and am equally certain that the Brunos will endorse:

> The relationship between the Brunos and First Federal was established and controlled by the Assumption Agreement, which is *essentially* a new loan agreement entered into between the Brunos and First Federal.

> \* \* \* \* \* \*

> The Brunos were not a party to the Reese First Federal loan, and that obligation was no longer extant after *Brunos obtained their own loan from First Federal* and the Reeses' loan obligation was discharged.

(Maj. Op., p. 1107–1108, 772 P.2d at 1202.)

Interestingly, to me at least, Judge Walters has not incorporated all of Judge McKee's written decision into the majority opinion, and specifically has not addressed the final three and one-half pages. It is to be expected that Judge Walters and the majority will continue to stand on their "new loan agreement hypothesis" after having adhered to it this long as a keystone of the opinion for the Court.

Accepting that this is true, I am fully compelled to agree with the contentions advanced by the Brunos in their opening brief. I am readily drawn to the conclusion that Judge McKee erred in his belief that there is no duty "as to disclosure to the new borrower (the Brunos in this instance) of the existence of the due-on-sale clause into the Reese deed of trust or that litigation had been filed challenging such a clause's enforceability." R., p. 319. To me it is clear that his rationale not only promotes unfairness, but also frustrates the beneficent purposes of 12 C.F.R. 556.9(a). For certain, as to what Judge Walters has written, the Brunos were becoming "Borrowers" from United First Federal.

## PART V

I can agree with the majority that it would be a fruitless endeavor to discuss the dismissal of the class action, but will assert that it was a strange and improper procedure for Judge McKee to take up the merits of certifying a class of 424 Brunos *before* deciding whether or not the Brunos were entitled to a trial on the merits.

As may be surmised, I would reverse with directions.

## APPENDIX A

### O'BOSKEY I
### MOTIONS FILED BY UNITED FIRST FEDERAL

| Motion Filed by United First | Date | Length | Ruling |
|---|---|---|---|
| Petition for Removal of Case # 73343 from State Court to U.S. District Court | 11/18/80 | 21 | Granted but later returned to Ada County |
| Motion to Quash Ab Initio Plaintiff's Temporary Restraining Order | 1/8/81 | | Denied |
| Motion for Summary Judgment | 1/15/81 | 1 | Denied |
| Motion for Reconsideration and for Certification of Question on Appeal | 10/16/81 | 7 | Denied |

### O'BOSKEY II
### MOTIONS FILED BY UNITED FIRST FEDERAL

| Motion | Date | Length | Ruling |
|---|---|---|---|
| Response to Plaintiffs' Request for Production of Documents | 1/20/81 | 5 | |
| Motion for Extension of Time to Produce Documents | 12/14/81 | 2 | Denied |
| Motion for Stay Pending Appeal | 12/20/81 | 1 | Granted |
| Motion for Protective Order | 5/7/84 | 3 | |
| Motion for Entry of Judgment & Dismissal of Action | 5/25/84 | 2 | Denied |
| Motion to Strike Plaintiffs' Supplemental Authority and in the Alternative to Submit Additional Memorandum in Reply | 6/26/84 | 8 | Denied |
| Motion for Clarification | 6/17/82 | 2 | |
| Motion for Protective Order | 6/28/84 | 2 | Denied |
| Motion to Compel Answers to Interrogatories | 6/28/84 | 2 | Denied |
| Motion to Strip Complaint of Class Allegations | 7/17/84 | 2 | Denied |
| Motion for Ex Parte Protective Order | 8/23/84 | 2 | Denied |
| Defendant's Objection to Plaintiffs' Proposed Order of September 11, 1984, AND Defendant's Alternative Proposed Order | 9/17/84 | 3 | Denied |
| Motion for Order Prohibiting Plaintiffs from Disclosing Documents and Incurring Further Expense | 10/29/84 | 2 | Denied |
| Motion to Alter or Amend Memorandum Decision and Order | 10/29/84 | 2 | Denied |
| Defendant's Supplemental Answers, Objections and Respons- | 10/30/84 | 22 | |

| Motion Filed by United First | Date | Length | Ruling |
|---|---|---|---|
| es to Plaintiffs' Discovery Requests | | | |
| Defendant's Response and Objection to Ex Parte Order Re: Notice of November 7, 1984 | 11/15/84 | 2 | Denied |
| Defendant's Objection to Proposed Findings of Fact and Conclusions of Law | 11/23/84 | 11 | |
| Defendant's Proposed Form of Injunction | 11/26/84 | 2 | |
| Affidavit of Craig Bolts Supplementing Mailing Lists | 1/11/85 | 9 | |
| Motion for Bifurcation and Evidentiary Hearing Regarding Plaintiffs' Claim for Attorney Fees | 2/4/85 | 2 | |
| Motion to Strike Affidavit of Glenn Petry | 2/4/85 | 3 | |
| Notice of Appeal | 3/4/85 | 3 | |
| Affidavit of Richard Cummings | 3/18/85 | 4 | |
| Motion for Reconsideration | 5/28/85 | 2 | Denied |
| Objection to Plaintiff's Supplemental Memorandum of Costs and Attorney Fees | 4/28/85 | 2 | |
| Answer to Interrogatories | 8/12/85 | 3 | |
| Notice of Appeal | 12/19/85 | 5 | |
| Motion for Stay of Execution | 12/19/85 | 3 | |