# Wytheville

## J. A. WHEELER, TRADING AS, ETC. v. JUSTUS S. WARDELL, RECEIVER, ETC.

June 12, 1939.

Record No. 2062.

Present, All the Justices.

170

The opinion states the case.

*Harry A. Shockey, Wilson M. Farr, Leake & Buford* and *Littleton M. Wickham,* for the plaintiff in error.

*Frank L. Ball* and *John C. McCarthy,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

We have here a 'suit by the Receiver of the Potomac Savings Bank of Georgetown, District of Columbia, who will hereafter be referred to as the receiver, against the plaintiff in error by notice of motion for judgment on two notes, one for $1173.00, dated December 20, 1933, signed by James E. Wilson and Ethel Wilson, payable thirty days after date to the order of Wheeler Milling Company at the Hamilton National Bank of Washington, Potomac branch, and endorsed "Wheeler Milling Co., by J. A. Wheeler." The second note, dated January 11, 1934, and payable one month after date in the amount of $690.00, is like the first in all respects, except that the sole maker was James E. Wilson.

The defendants, James E. Wilson and Ethel Wilson, in the case of the first note, and James E. Wilson as to the second, made no defense to the actions. They were not served with notice. A judgment against them, or either of them, would not have availed anything.

"The plaintiff introduced the two notes; identified the signature of the defendant, Wheeler, as endorser on them; proved that they had not been paid and had been duly protested when due and notices mailed to all parties; that they were part of the receivership trust; that they were not taxable in Virginia; that the whole amounts of principal, interest and attorneys' fees were due; and rested his case."

The defendant, in both actions, filed three pleas. The first was general in its nature, denying his liability as complained and alleging that the plaintiff was not a holder in due course; that the said notes were not taken in good faith and for value, and that at the time of their negotiation the plaintiff had notice of the infirmity in the instrument or defect in the title of the person negotiating them. The second was a plea of accord and satisfaction, and the third was a plea of release.

The entire defense grows out of these alleged facts, which the defendant offered to prove: That the notes grew out of a transaction which took place in 1931 when he se-

cured them from his customers, Wilson and Jenkins, who were operating a dairy situated near Wheeler's mill, and who owed him for mill stuffs that they had purchased for the purposes of the dairy; that at that time he informed the bank that he intended to sue on these notes because Jenkins was making no effort to pay and was getting deeper in debt; that Mr. Offutt, president of the bank, said that he, Jenkins, also owed the bank, and had abandoned any idea of paying anything even on his personal notes; that Offutt said that the bank didn't want to press him for payment, and asked Wheeler to ascertain if Jenkins would make over to Wilson all his interests in the firm, and that would afford Wilson an opportunity to proceed with the business and work the thing out, and he, Offutt, expressed the belief that Wilson could do it; that, pursuant to Wheeler's efforts, Jenkins transferred to Wilson all of his interests in the property of the firm, including the real estate, and that cotemporaneously therewith, Wilson executed a deed of trust on all of this property and assigned all of his income from the sale of milk to secure the payment of a bond for $15,000.00, which was taken and held as collateral security for all the notes bearing Wilson's signature at the bank, including the two notes herein.

It will be noted that when the original notes were given in 1931 by Wilson and Jenkins for indebtedness due by them, Wheeler had them discounted at the Potomac Savings Bank, in which he was a depositor. The money which they produced, after the discount charges were deducted, was paid to Wheeler, or placed to his credit. The notes were renewed from time to time from their inception to their dates at the time of the notices of motion for judgment. The renewals were for the same amounts, with Wilson as maker and Wheeler as endorser.

As has been indicated, the defenses set up to defeat liability upon the part of Wheeler include the charge that the receiver was not a holder in due course, and that the notes were given conditionally, in that there was some mutual agreement between the immediate parties to the transaction

prior to and at the time of the giving of the notes, and that parol evidence is admissible to show what the conditions referred to were. These defenses were embodied in the defendant's exception to the ruling of the court in excluding from the consideration of the jury the evidence sought to be introduced by the defendant.

 It will be noted that this does not include the substance of his pleas, heretofore mentioned, and neither the pleas nor the exceptions set out the defense that there was no consideration for the endorsement. In other words, that defense is not found in the transcript of the record, unless by implication, but it is accentuated for the first time in this court in the petition and reply brief of the defendant. If we are correct as to this, then this defense cannot be considered by this court. If we are in error and it is alive here we think that the trial court was correct in excluding the proffered testimony as being offensive to the rule that parol testimony will not be received to vary the terms of a written contract.

In Bigelow on Bills, Notes and Checks, Third Edition (Lile), page 354, section 460, we find the following:

"Holder in Due Course—What Constitutes.—The statute, following the unwritten rule, declares that in order to occupy this highly favored position the plaintiff must be a 'holder who has taken the instrument under the following conditions:—

'1. That it is complete and regular upon its face;

'2. That he became the holder of it *before it was overdue,* and *without notice* that it had been previously dishonored, if such was the fact;

'3. That he took it *in good faith* and *for value;*

'4. That at the time it was negotiated to him he had *no notice of any infirmity* in the instrument or *defect in the title* of the person negotiating it.'

 "A fair syllabus of these requirements is: Such a holder must be: (1) a *holder*—in the sense of the Law Merchant; (2) A holder in *good faith*—that is, having taken the paper without notice, in fact or in law, of existing

defects or defenses, and with such caution as is required by the Law Merchant; and (3) A holder *for value.*

■ "It will appear, however, in a later section, that one who *claims through* a holder in due course stands in the latter's shoes, with all the rights himself of a holder in due course."

■■ Every requisite element thus enumerated to constitute a holder in due course is present in the transactions with which we are concerned. The bank was a holder in due course as was the receiver, who was appointed by the U. S. Comptroller, and if the receiver, *per se,* is not a holder in due course, then he stands in the shoes of the bank with all of the rights which it had. The status of the bank as a holder in due course precludes the admissibility of parol evidence even as to the defense of no consideration.

We quote again from the learned author last mentioned, found on page 385, section 491:

"Value, Continued—Presumption.—Postponing for future consideration the several presumptions in favor of the holder in due course, it will be sufficient here to quote the statute as to the presumption of value:

" 'Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

■ In the case of *Coal River Collieries* v. *Eureka Coal and Wood Co.,* 144 Va. 263, 283, 132 S. E. 337, 343, 46 A. L. R. 485, this court said, through the eminent Judge Burks:

"The parol evidence rule in effect declares that where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms, the writing shall be the sole memorial of that contract, and it is conclusively presumed that the writing contains the whole contract. The writing alone is the evidence of the contract and no other will be received. Applying this rule to the case at bar it seems clear that the trial court erred in admitting parol evidence that Orleans signed as president of the company and not individually. The note on its face

plainly imports a personal liability, and to admit such evidence would be disastrous to business. We cannot afford to relax a rule so beneficial to the business interests of the country, and which is such a safeguard against fraud and perjury."

In speaking of the admissibility of parol evidence it is also said in the above case, at page 268:

"A number of text books and cases have been cited on both sides, and we have given them the consideration which the importance of the question demands, and some of those most relied on are hereinafter considered, but in none of them, so far as we have discovered, has such evidence been admitted unless there was something on the face of the instrument, or in the manner of the signature, to create an ambiguity, or an uncertainty as to the liability of the party signing."

Upon this interesting question we have a very apt and strong statement from the very late and valuable work, American Jurisprudence, volume 8, page 645, section 1076:

"Majority Rule.—According to the great weight of authority, the contract implied from the unqualified endorsement of an instrument which has had a valid inception in the hands of the payee with the intent to pass title therein cannot, even as between the parties, be varied or explained by parol evidence of a prior or contemporaneous agreement, whether such indorsement is made in blank or in full. This is true under the Uniform Act. The fact that the rights of a bona fide holder or holder in due course are involved is simply an additional reason for excluding the evidence. * * * "

The defendant urges that there was a novation of the contract and that there was accord and satisfaction as to himself. We find both of these terms aptly defined in Black's Law Dictionary, Third Edition, page 1261:

"Novation is a contract, consisting of two stipulations,— one to extinguish an existing obligation; the other to substitute a new one in its place. Civ. Code La. art. 2185. The

term was originally a technical term of the civil law, but is now in very general use in English and American jurisprudence.

"In the civil law, there are three kinds of novation: (1) Where the debtor and creditor remain the same, but a new debt takes the place of the old one; (2) where the debt remains the same, but a new debtor is substituted; (3) where the debt and debtor remain, but a new creditor is substituted. *Adams* v. *Power,* 48 Miss. 450, 451.

"Every novation embraces, necessarily, an accord and satisfaction; the principal distinguishing feature between them being that a novation implies the extinguishment of an existing debt by the parties thereto and its transition into a new existence between the same or different parties, whereas, an 'accord and satisfaction' relates solely to the extinguishment of the debt or obligation. *Cooke* v. *McAdoo,* 85 N. J. Law, 692, 90 A. 302, 303."

It will be readily seen that neither of these legal principles obtains in the case in judgment even if the defendant's testimony were admissible.

We perceive in the case in judgment no rational theory except that the renewal notes, which are the basis of this action, are a continuance of the transaction between the parties in the early part of 1931. What they were then, they are now.

The conveyance from Jenkins to his partner, Wilson, and the cotemporaneous deed of trust from Wilson and his wife to secure a penal bond, which made the notes in question safer and more secure, were simply incidents in the life of the transaction which inured to the benefit of the endorser as well as the bank, which cannot be read or considered to change its inherent nature or impair its incipient validity. There cannot be found anything in the incident which suggests either novation or accord and satisfaction.

As to the defense that the defendant forbore to sue the makers of the notes because the bank desired him so to do, his own testimony is unsatisfactory as proof of it and the circumstances show that a suit by him for such purpose

would not only have been futile of beneficial results, but that he would have been caught in the ensuing wreckage as well as everyone else concerned. The deed of trust mentioned was the fourth encumbrance of like nature on the property conveyed by it. If its effect was to strengthen the position of the bank, it was also an additional fortification to the defendant.

The whole matter was conceived as a partial payment of the indebtedness due to the defendant by one of his customers. Its genesis was an antecedent or pre-existing debt due to himself, which the statute says constitutes value; and is deemed such whether the instrument is payable on demand or at a future time.

The notes were renewed more than a score of times, extending over a period of years after the existence of the claimed defenses. Upon each occasion the defendant endorsed them. Can it be held that this was only a matter of form? We think not, if the Law Merchant is to serve its benign economical purpose and if the parol evidence rule is to remain an inviolable legal landmark. These are consummations to be desired, and they must not be imperiled by yielding to subtle distinctions and attenuated reasoning designed to overthrow them.

See the following case: *Ward* v. *Bank of Pocahontas,* 167 Va. 169, 187 S. E. 491; *Baach* v. *Bank of Pocahontas,* 157 Va. 274, 160 S. E. 68, 76 A. L. R. 1324; *Continental Trust Co.* v. *Witt,* 139 Va. 458, 124 S. E. 265; *Lynch* v. *O'Brien,* 115 Va. 350, 79 S. E. 389, and *Keckley* v. *Union Bank of Winchester,* 79 Va. 458.

We affirm the judgment of the trial court.

*Affirmed.*