556 P.2d 67

**Harold L. HARRIS, Plaintiff-Respondent,**

v.

**WILDCAT CORPORATION, a corporation, Defendant-Appellant,**

and

**Leon F. Garner et al., Defendants.**

**No. 11994.**

Supreme Court of Idaho.

Nov. 5, 1976.

E. W. Pike, Albaugh, Smith, Pike, Martin & Gaskill, Idaho Falls, for defendant-appellant.

G. Rich Andrus, Rigby, Thatcher & Andrus, Rexburg, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiff-respondent in an action essentially presenting questions of the existence of a novation. The resolution of the issue of novation is dispositive. We reverse.

In the spring of 1968 defendant-appellant Wildcat Corporation was the owner of real property located in the village of Last Chance, Fremont County, Idaho, on which were buildings used as a drive-in restaurant and a bar. Wildcat sold the property by contract to James Moran and Leon Garner. The total purchase price was $80,000 of which $8,000 was paid to Wildcat as a down payment. Shortly thereafter Garner and Moran contracted with plaintiff-respondent Harold Harris for remodeling

one of the buildings for a total price of approximately $28,000, of which $5,000 was paid on account.

In early 1969 Garner and Moran defaulted on both their purchase contract with Wildcat and their remodeling contract with Harris and abandoned the property. Thereafter Garner executed a quit claim deed to the property back to Wildcat. Harris initiated the instant action in the nature of a lien foreclosure. Trial was held thereon and following completion of plaintiff Harris' case, Wildcat moved to dismiss on the grounds that Harris failed to present a prima facie case. That motion was denied by the court and the matter was taken under advisement. Thereafter a memorandum opinion was issued stating that while Harris had failed to prove his case as against Wildcat, he might be able to prove a case on the theory of either unjust enrichment or subrogation to the rights of the vendee and therefore the court ordered a new trial in the matter.

Over Wildcat's objections, a second trial was held and the testimony, which was hotly controverted, related primarily to the "increased" value of the property and thus whether Wildcat had been unjustly enriched. The matter was again taken under advisement by the court. Thereafter the then attorney for Harris (not counsel on appeal) initiated a settlement process. During the second trial Wildcat had indicated that it would be willing to dispose of the property for a price of $80,000. Harris' attorney located new buyers for the property (England) and prepared ·a contract of sale between Wildcat and the new buyers. Those documents were signed by all parties including England, Wildcat and Harris. England executed and delivered to Harris a note in his favor in the amount of $18,000 secured by England's vendees' interest in the property. Wildcat was not named therein nor was it a signatory to the note or mortgage. A down payment of $2,000 was made by England to Harris. Wildcat received $10,000 from England as a down payment on the England-Wildcat land purchase.

The intention of Harris in entering into the negotiations is indicated when he stated that he believed "[M]y rights would be guaranteed through the mortgage I had with Jim England through his assets or his collateral or his equity in that property." Harris' then-attorney indicated the intent in the England transaction in his later testimony as follows:

"The matter was discussed with Mr. Harris, and he indicated a willingness to accept $18,000 from Mr. England and then look to Mr. Garner and Mr. Moran for the deficiency which he had coming on the claim of lien * * *."

Harris' then-attorney wrote to counsel for Wildcat:

"* * * the judgment should be to the effect that title is to be quieted in the name of Wildcat Corporation as to any claim of lien which Mr. Harris may have had through Leon Garner and Jim Moran and further that title was to be quieted in the Wildcat Corporation as to any claim which Leon Garner and Jim Moran may have had against the property as the result of a vendee's interest. Further, that the case was settled as the result of the sale of the property at the total amount of $98,000 and that as the result of the sale Harris was to receive $18,000 from the new vendee and hence, Harris would be entitled to a deficiency judgment against Garner and Moran for the balance of his claim against them."

The then-attorney for Harris informed the district judge that a settlement of the case had been reached and no decision need be reached. Judicial notice of that fact was later taken by the district judge in the third trial of this matter.

As the best laid plans gang aft agley, the Englands' evidently suffered the same ill fortune as did the earlier vendees and were unwilling or unable to perform on their

contracts. They defaulted on both their purchase contract with Wildcat and their note and mortgage to Harris. Harris initiated an action on the promissory note and mortgage against the Englands. The record does not disclose the outcome, if any, of that action.

Thereafter a third trial in the action by Harris against Wildcat was ordered by the court again after objection by Wildcat. Extensive testimony was taken relating largely to whether or not the action had been settled and compromised between the time of the second and third trial.

The trial court made findings that he had been informed by Harris' then-attorney that a settlement had been reached but he found nevertheless that settlement had not been reduced to writing, that the parties had not "sat down together and worked out an agreement between themselves," and that Wildcat had been "unofficiously" and unjustly enriched by the labor and materials furnished by Harris. The court entered judgment, relevant portions of which here are in favor of Harris against Wildcat in the sum of $16,000.

Wildcat appeals and assigns numerous errors to the findings, conclusions and judgment of trial court and to asserted procedural errors. None of those assignments need be considered, save and except that relating to the court's failure to find a novation—accord and satisfaction.

A novation results when an accord and satisfaction is reached by substitution of a new agreement or performance in place of the performance or compromise of the original obligation. Thus, novation is a species of accord and satisfaction. 1 C.J.S. Accord and Satisfaction § 5, p. 465; *Wheeler v. Wardell*, 173 Va. 168, 3 S.E.2d 377 (1939). It is stated in *Wheeler v. Wardell, supra*, that novation is a contract consisting of two stipulations; first, to extinguish an existing obligation and, secondly, to substitute a new one in place of the original. The court stated:

" 'Every novation embraces, necessarily, an accord and satisfaction; the principle distinguishing feature between them being that a novation implies the extinguishment of an existing debt by the parties thereto and its transition into a new existence between the same or different parties, whereas an 'accord and satisfaction' relates solely to the extinguishment of the debt or obligation.' "

To establish an accord and satisfaction the parties accepting a new or different obligation must do so knowingly and intentionally. *Heckman v. Boise Valley Livestock Comm'n Co.*, 92 Idaho 862, 452 P.2d 359 (1969); *Fairchild v. Mathews*, 91 Idaho 1, 415 P.2d 43 (1966); *Allan Steel Supply Co. v. Bradley*, 89 Idaho 29, 402 P.2d 394 (1943). An accord and satisfaction may be implied from the attendant circumstances. *Independent School Dist. Class A, Number One v. Porter*, 39 Idaho 340, 228 P. 253 (1924); *Fairchild v. Mathews, supra*; *Winn v. Rudy-Patrick Seed Co.*, 249 Iowa 431, 86 N.W. 2d 678 (1957); *Scott v. Imperiol Hotel Co.*, 75 Ga.App. 91, 42 S.E.2d 179 (1947).

The above recited evidence makes clear that Harris through his then-attorney entered into an accord and satisfaction as to Harris' claim against Wildcat. Harris' then-attorney found the new buyers, England, initiated the purchase contract between Wildcat and England and prepared the instruments and secured their execution. Harris was to obtain satisfaction of his otherwise claim against Wildcat by receiving a note from England secured by a mortgage on England's vendee interest in the property. The testimony is clear that by so doing Harris intended to look to England for the satisfaction of his claim rather than Wildcat, and on such basis Harris' attorney settled the litigation between Harris and Wildcat.

We hold that the evidence before the trial court would permit no other finding or conclusion.

Thus the judgment of the trial court insofar as it purports to grant judgment in

favor of Harris and against Wildcat is reversed. The cause is remanded to the district court for further proceedings consistent herewith. Costs to appellant.

McFADDEN, C. J., and DONALDSON, BAKES and BISTLINE, JJ., concur.