819 P.2d 100

**Darrel R. HOGLAN and Dixie Hoglan, husband and wife, Plaintiffs–Respondents,**

v.

**FIRST SECURITY BANK OF IDAHO, N.A., Defendant–Appellant.**

No. 18132.

Supreme Court of Idaho, Lewiston, April 1990 Term.

Sept. 10, 1991.

Rehearing Denied Nov. 19, 1991.

Aherin & Rice, P.A., Lewiston, for defendant-appellant.  Stephan C. Rice, argued.

Clark & Feeney, Lewiston, for plaintiffs-respondents.  Paul T. Clark, argued.

McDEVITT, Justice.

Darrel and Dixie Hoglan applied for and received a VISA credit card account from First Security Bank of Idaho, N.A. ("First Security").  The account was for the personal use of the Hoglans.  The Hoglans' closely held corporation, D.R. Hoglan Construction, Inc., subsequently filed for bankruptcy, and in accordance with bank policy, First Security canceled the Hoglans' VISA account.  After notifying the Hoglans of the cancellation on April 15, 1983, First Security stopped sending monthly billing statements for this account, sending them instead to a bank office in Boise.  The Hoglans did not make payments in April or May of 1983, but made a $100.00 payment in June of 1983.

The Hoglans were issued new VISA cards with a new account number in January of 1984.  That day they paid the outstanding balance of the canceled credit card account in full.  However, prior to the issuance of the new card and the payment in full on the original card, First Security listed the canceled account balance as "charged off."  A charged off debtor's account is treated no longer as an asset by the bank and is a write-off of the amount due.  A few days later First Security credited the Hoglans' check against the outstanding balance, leaving a zero balance due.  First Security continued to list the old account as charged off, but with a zero balance.

At the end of each month, TRW, a credit reporting agency, collects information from First Security relating to First Security's experience with its customer transactions.  Such information is made available to persons or entities who want to determine a person's credit rating.  TRW received information from First Security that the Hoglans were responsible for an account that First Security had charged off to profit and loss.  This paid charge off was not deleted until July of 1987.

The Hoglans brought suit, alleging breach of contract, libel, the intentional infliction of emotional distress, invasion of privacy, breach of fiduciary duty, and negligence.

The jury's special verdict found that there was a breach of contract by First Security and a publication of a libelous statement that caused damage to the Hoglans.  The jury also found that First Security had been negligent.  The jury awarded $20,000.00 in compensatory dam-

ages and $200,000.00 in punitive damages. First Security timely filed a motion for judgment notwithstanding the verdict ("JNOV"), or alternatively, new trial, or alternatively, remittitur. First Security appeals from the district court's denial of all post-judgment motions.

■ The following standards govern our review of the district court's decision. Where the court has ruled on a motion for JNOV, our standard is the same used by the trial court on the original motion; we review the record and draw all inferences in favor of the non-moving party to determine if there is substantial evidence to support the verdict. *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). In contrast, where we also review a district court's ruling on a motion for new trial, we acknowledge that "[t]he trial court possesses discretion to grant or refuse to grant a new trial, and such discretion will not be disturbed on appeal unless it clearly appears to have been applied unwisely, and to have been manifestly abused." *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 286, 766 P.2d 751, 756 (1988) (citations omitted).

■ A request for remittitur or additur is treated as an alternative request for new trial under I.R.C.P. 59(a)(5):

> The trial judge must first have determined that the jury's damage award was so excessive that it could only have been a product of passion or prejudice on the part of the jury. A motion for a remittitur of damages is purely an alternative to this basis for a new trial. Hence, the amount by which the trial judge offers to reduce the damage award is a discretionary decision that is inexorably linked to the exercise of discretion in ruling on a new trial motion under I.R.C.P. 59(a)(5).

*Quick v. Crane*, 111 Idaho at 770, 727 P.2d at 1198.

## FAIR CREDIT REPORTING ACT

■ The Fair Credit Reporting Act (FCRA), 15 U.S.C.A. §§ 1681–1681t, was designed to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, ... and other information in a manner that is fair and equitable to the consumer...." 15 U.S.C.A. § 1681(b).

The defendants assert that the FCRA should apply to this action because they wish to take advantage of the qualified immunity contained in the Act. This was raised as an affirmative defense. The qualified immunity is contained in § 1681h(e):

> Except as provided in sections 1681n and 1691o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, and user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, except as to false information furnished with malice or willful intent to injure such consumer.

This qualified immunity provided for in the FCRA was included in the jury instructions. Instruction No. 18, the libel instruction, required the jury to find "[t]hat the defendant in publishing the false words acted with malice as defined in these instructions in failing to determine the truth of the words prior to publishing them, or with willful intent to injure the plaintiffs." Similarly, Instruction No. 19, the negligence instruction, stated as an element "[t]hat the defendant was negligent, and the negligence involves the furnishing of false information with malice as defined in these instructions or willful intent to injure plaintiffs." Malice was defined in Instruction No. 13, as "something that was said, made, or done with knowledge that it was false or with reckless disregard of whether it was false or not."

The jury took this qualified immunity into consideration and specifically found in the Special Verdict that First Security did publish a libelous statement which was a proximate cause of the damages suffered by the Hoglans, and that there was negligence on the part of First Security.

Because the qualified immunity was contained in the jury instructions, we hold that there was no error in not applying the FCRA.

## STATUTES OF LIMITATION

■ Idaho Code § 5–219(5) provides that an action for libel must be brought within two years. The Hoglans filed their Complaint on August 21, 1987. First Security first furnished the information to TRW in November of 1983. "Under I.C. § 5–219, a cause of action accrues at the time of the wrongdoing, rather than at the time of discovery of the wrongful act." *Wing v. Martin*, 107 Idaho 267, 270, 688 P.2d 1172, 1175 (1984). The subsequent reporting by TRW to Idaho First National Bank is not relevant. TRW was responsible for making the publication, and they are not a party to this case. There was no evidence of an agency relationship between TRW and First Security. Therefore, the statute began to run in November of 1983, barring any action after November of 1985. We hold that the claim for libel was barred by the statute of limitations, and as such, it was error for the trial judge to allow this cause of action to be submitted to the jury.

■ There is not a specific statute of limitations that applies to negligence actions not based upon personal injury or malpractice. Therefore, the applicable statute of limitations for the Hoglans' negligence claim is I.C. § 5–224, the four year catch-all provision. In their amended complaint the Hoglans allege a continuous course of negligent behavior by First Security. We, however, must determine the first act of negligence in order to apply the statute of limitations.

We determine the first negligent act committed by First Security occurred when the Bank received payment in full from the Hoglans, credited the check against the outstanding balance, and continued to characterize the account as charged off. This series of events occurred in January of 1984. The refusal to correct the information in the credit report falls within the time limit of the applicable statute of limitations. This claim for negligence was not barred.

An action on a written contract must be commenced within five years. I.C. § 5–216. The earliest act which could be considered the basis for a breach of contract claim occurred in March of 1983, when First Security stopped sending the monthly statements. The filing by the Hoglans in August of 1987 is within the five year period. The Hoglans' action for breach of contract clearly falls within this limitation and was not barred by the statute of limitations.

## FIRST SECURITY'S REQUEST FOR JNOV WAS PROPERLY DENIED

■ First Security's I.R.C.P. 50(b) motion is founded on the assertion that there was not substantial evidence to support the jury's verdict. They also argue that there was no proof at trial of the causal connection between First Security's conduct and the compensatory damages that were awarded for libel, negligence, and breach of contract.

We cannot hold that the denial of First Security's request for JNOV was improper. It was proper to let the jury decide whether the report furnished to TRW by First Security was accurate and whether it was damaging to the Hoglans. It was also proper for the jury to decide if First Security was negligent and whether they breached their written contract with the Hoglans. We cannot say "that there can be but one conclusion as to the verdict that reasonable minds could have reached." *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). Therefore we hold that the denial of the motion for JNOV was correct.

## REQUEST FOR NEW TRIAL

First Security argued a number of grounds for new trial, referring to I.R.C.P. 59(a)(5), (6), and (7). First Security asserts that the trial judge improperly excluded the defenses of rescission and accord and satisfaction; and that the trial judge should not have instructed the jury on punitive damages. As to its claim for remittitur, First

Security maintains that the damages awarded were the product of passion or prejudice, and should therefore be, at the least, reduced.

■ The court properly excluded the defenses of rescission and accord and satisfaction. Accord and satisfaction applies only if the parties knowingly and intentionally accept new obligations or a different contractual relationship. *Harris v. Wildcat Corp.*, 97 Idaho 884, 556 P.2d 67 (1976). "Rescission is an equitable remedy that totally abrogates the contract and restores the parties to their original positions." *Blinzler v. Andrews*, 94 Idaho 215, 485 P.2d 957 (1971). The circumstances of this case, even when construed in First Security's favor, did not support a jury instruction on either of these defenses.

■ A Rule 59(a)(5) motion for new trial ("excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice") requires specific findings as to whether or not the damages awarded were indeed the product of passion or prejudice. *O'Dell v. Basabe*, 119 Idaho 796, 810 P.2d 1082 (1991); *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986). If the trial judge finds that the award could only have been the result of passion or prejudice, a new trial must be granted. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986).

Because we are vacating the judgment as to punitive damages for reasons outlined in the next section, that portion of the judgment will not require the Rule 59(a)(5) analysis. However, we sustain the compensatory damages awarded by the jury, and remand to the trial court for specific findings as to the Rule 59(a)(5) motion as required by our case law.

In making this determination to sustain the $20,000 in compensatory damages, it is helpful to look at the jury verdict. In its entirety, the special verdict read:

## SPECIAL VERDICT

We, the jury, answer the questions submitted to us in the special verdict as follows:

QUESTION NO. 1: Was there a publication of a libelous statement by defendant which was a proximate cause of any damages suffered by plaintiffs?

ANSWER: Yes 10 No 2

QUESTION NO. 2: Was there a breach of contract on the part of defendant which caused damages to the plaintiffs as defined in these instructions?

ANSWER: Yes 12 No 0

QUESTION NO. 3: Was there negligence on the part of defendant which was a proximate cause of any damages suffered by plaintiffs?

ANSWER: Yes 10 No 2

If you answered Question No. 3 "Yes," then you will answer Question No. 4. If you answered Question No. 3 "No," then you will not answer Questions Nos. 4 and 5, but will next answer Question No. 6, if you answered Questions Nos. 1 or 2 "Yes." If you answered Questions Nos. 1, 2, and 3 "No," you will not answer any more questions, but will simply sign the verdict form and inform the bailiff you are done.

QUESTION NO. 4: Was there negligence on the part of the plaintiffs which was a proximate cause of any damages suffered by them?

ANSWER: Yes 0 No 12

If you answered Question No. 4 "No," then you will not answer Question No. 5, but will next answer Question No. 6. If you answered both Questions Nos. 3 and 4 "Yes," then you will next answer Question No. 5.

QUESTION NO. 5: We find that the parties' negligence contributed to any damages suffered by plaintiffs in the following percentages:

| | |
|---|---|
| a) Plaintiffs, Darrel R. Hoglan and Dixie Hoglan | __% |
| b) Defendant First Security Bank | __% |
| Total | 100% |

If the percentages of negligence for the plaintiffs is 50% or more and you answered "No" to Question Nos. 1 and 2, then you will not answer any further questions, but will sign the verdict.

If the percentages of negligence for the plaintiffs is less than 50% and/or you

answered "Yes" to Questions Nos. 1 or 2 you will then answer Question No. 6.

QUESTION NO. 6: What is the total amount of compensatory damages sustained by the plaintiffs as a result of defendant's conduct, without regard to punitive damages?

ANSWER: $20,000

QUESTION NO. 7: Do you find that punitive damages should be awarded?

ANSWER: Yes 10 No 2

If you answered Question No. 7 "Yes," then you will answer Question No. 8. If you answered Question No. 7 "No," then you will not answer the remaining question, but will simply sign the verdict.

QUESTION NO. 8: What is the total amount of punitive damages you wish to award to the plaintiffs?

ANSWER: $200,000

DATED on this 10 day of February, 1989.

The special verdict shows that the jury found the defendant liable under all three causes of action presented to it. While we reverse on the issue of liability as to libel, the findings of negligence and breach of contract remain intact. While the jury did not apportion the $20,000 in compensatory damages between the three theories of liability that they found in favor of the plaintiffs, they were not asked to perform such task. The fact that we vacate the judgment as to the claim of libel is no basis to impugn the verdict of the jury. The $20,-000 was awarded as a total amount for "damages sustained by the plaintiffs as a result of defendant's conduct...." The jury's specific findings of negligence and breach of contract support the award of compensatory damages. Therefore, we affirm the jury verdict as to compensatory damages.

## PUNITIVE DAMAGES

■ In *Cheney v. Palos Verdes, Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), we stated:

An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence;" "malice, oppression, wantonness;" or simply "deliberate or willful."

*Cheney*, 104 Idaho at 905, 665 P.2d at 669 (citations omitted).

It is within the trial court's discretion to allow the question of punitive damages to be submitted to the jury. *Soria v. Sierra Pacific Airlines*, 111 Idaho 594, 611, 726 P.2d 706, 723 (1986). When reviewing this decision, we focus on the sufficiency of the evidence. *Garnett v. Transamerica Ins. Servs.*, 118 Idaho 769, 781, 800 P.2d 656, 668 (1990).

Here, there was not a sufficient showing of conduct amounting to "an extreme deviation from reasonable conduct" to allow the issue of punitive damages to go to the jury. To be sure, First Security breached its contract with the Hoglans when they stopped sending the monthly statements. It is also not disputed that the bank was negligent when it took them over one year to correct the credit information. But there is not evidence in the record to indicate that First Security "acted with an extremely harmful state of mind."

Almost every individual has met with frustration when dealing with a bureaucracy; whether it be a bank, a government agency, or a retail establishment. It sometimes seems that policies and unreasonable employees exist to transform what should be simple transactions into nightmarish encounters. The Hoglans' experience in trying to straighten out their credit report is an extreme example. However, it was not bank policy to maliciously, intentionally, or willfully undermine their credit rating. In fact, the local First Security bank manager attempted to correct the error. First Security's conduct does not rise to the level of the showing necessary to instruct on puni-

tive damages. As such, we vacate the judgment as to punitive damages.

## CONCLUSION

We hold that the claim for libel was barred by the statute of limitations and should not have been submitted to the jury. Accordingly, we vacate the judgment as to libel. In addition, we vacate the judgment as to the punitive damages, and remand for specific findings as to the compensatory damages under Rule 59(a)(5).

Costs to appellant on appeal.

JOHNSON, J., concurs.

BOYLE, J., concurs in result.

BISTLINE, J., sat but did not participate.

BAKES, Chief Justice, concurring specially and dissenting in part:

### I.

I concur in the Court's analysis and conclusion that the libel claim was barred by the statute of limitations; that the breach of contract claim was not barred by the statute of limitations; that the trial court did not apply the correct standard for evaluating the claim for new trial or remittitur under I.R.C.P. 59(a)(5), requiring a remand and reevaluation of that claim; and that there was insufficient evidence to submit the issue of punitive damages to the jury, and thus that claim should have been dismissed.

### II.

As to the Court's conclusion that the negligence claim was not barred by the statute of limitations, that is not sufficient in itself to affirm the determination of liability based on negligence in this case. Here, the plaintiffs have not shown any legal duty owed by the bank other than the duty arising out of the contractual relationship over the VISA card. The breach of that duty was the breach of a contract and does not constitute a tort in the absence of showing some other legal duty established by law independent of the contract. "The mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself," *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). As this Court stated in *Steiner Corp. v. American Dist. Tele.*, 106 Idaho 787, 790, 683 P.2d 435, 438 (1984), "However, by law Steiner can maintain an action in tort only when a breach of a tort duty is alleged, which duty arose separate and apart from the breach of contract. *Just's, Inc. v. Arrington Const. Co.*, 99 Idaho 462, 583 P.2d 997 (1978); *McAlvain v. General Ins. Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976); *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971)." I believe that no duty, independent of the breach of the contractual relationship over the VISA card, has been shown and therefore the trial court erred in not dismissing the negligence claim against the bank.

### III.

As to the Fair Credit Reporting Act claim raised by the appellant, the Court concludes that, even though the jury was not specifically advised of the qualified immunity defense which the federal act provides, nevertheless because the jury was instructed in Instruction No. 18 (dealing with libel) and Instruction No. 19 (dealing with negligence) that the defendant had to furnish the "false information with malice as defined in these instructions or willful intent to injure plaintiffs" (Instruction No. 19), that there was no error in not applying the federal Fair Credit Reporting Act. However, the court's Instruction No. 17, relating to the breach of contract claim, did not instruct the jury that there was a qualified immunity under the federal Act with regard to the contract claim, nor did the contract instructions advise the jury that the defendant would have had to act with malice in order to be liable on the contract claim, as the Fair Credit Reporting Act appears to require. Admittedly, Instruction No. 18 (dealing with libel) did require that the defendant act with malice. However, the court has set aside the libel claim on the ground that it was barred by the

statute of limitations. The court further holds that because the trial court's Instruction No. 19 (dealing with negligence) stated that the plaintiff must prove "that the defendant was negligent, and the negligence involves the furnishing of false information with malice as defined in these instructions or willful intent to injure the plaintiffs," the defendant received the qualified immunity required by the Fair Credit Reporting Act.

However, the trial court erred in submitting the negligence claim to the jury for the reasons set out in Part II above. Secondly, Instruction No. 19 is erroneous and internally inconsistent when it states that "the defendant was negligent and the negligence involves the furnishing of false information with malice as defined in these instructions or willful intent to injure the plaintiff." "Malice" was defined in Instruction No. 13 as "something that was said, made or done with knowledge that it was false or with reckless disregard of whether it was false or not." Negligence and malice (reckless disregard) connote entirely different levels of culpability, and to say that something must be proved to be both negligence and "malice" is internally inconsistent. Even assuming that the negligence issue was a proper issue in the case, I feel reasonably certain that Instruction No. 19 does not properly advise the jury that the defendant had a qualified immunity under the Fair Credit Reporting Act and that the jury should have been instructed on the qualified immunity. Merely instructing the jury that they must find negligence and malice was not adequate to inform the jury that the federal statute granted a qualified immunity.

Erroneously submitting the negligence claim to the jury, as set out in Part II, coupled with the fact that the court's instructions concerning the plaintiff's contract claim made no reference to the qualified immunity contained in the Fair Credit Reporting Act, makes me conclude that the judgment of the trial court should be reversed entirely and the matter remanded for a new trial solely on the plaintiff's contract claim. On retrial the jury should be specifically instructed that the Fair Credit Reporting Act grants a qualified immunity to the bank "except as to false information furnished with malice or willful intent to injure such consumer."

However, since the Court is upholding two of the three theories of liability—contract and negligence—I agree that because the jury did not apportion the $20,000 in compensatory damages among the three theories of liability in which they found in favor of the plaintiffs, there is no basis to "impugn the verdict of the jury" as to damages where the damages are supported by one or more legal theories of liability which we have affirmed. *White v. White*, 94 Idaho 26, 480 P.2d 872 (1971) ("This Court will affirm the judgment below if it may be done on any theory supported by competent evidence."); *Fischer v. Fischer*, 92 Idaho 379, 443 P.2d 463 (1968) ("Where a judgment of the trial court is based on alternate grounds, if the judgment can be affirmed on any one of the grounds the fact that the alternative ground may have been in error is of no consequence and may be disregarded. To state this principle in another manner, this Court must uphold the finding and judgment of the trial court if it is capable of being upheld on any theory."). However, in view of the erroneous instruction regarding the claims in Parts II and III, I believe the judgment should be reversed in its entirety.