IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42876-2015

UNIFUND CCR, LLC,
Plaintiff-Respondent,

v.

LORENE K. LOWE,
Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Boise, January 2016 Term

2016 Opinion No. 10

Filed: February 11, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Fremont County.  Hon. Gregory W. Moeller, District Judge.

The judgment of the district court is affirmed.

Ryan A. Ballard; Ballard Law, PLLC; Rexburg, argued for appellant.

Michael B. Howell; Howell & Vail, LLP; Meridian, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Fremont County from a judgment for the balance owing on two credit card accounts, based upon the district court's holding that this action was filed within the five-year statute of limitations of Idaho Code section 5-216 because the cardholder agreements were written contracts.  We affirm the judgment of the district court.

## I.
## Factual Background.

Lorene K. Lowe had two credit cards issued by Citibank, N.A.  The account for the first credit card ("Account No. 0415") was opened on July 1, 1996, and the last payment on the account was posted by Citibank on August 3, 2009, which left a balance of $16,981.51 on the account.  The account for the other credit card ("Account No. 2085") was opened on August 10, 1998, and the last payment on the account was posted by Citibank on September 25, 2009, which left a balance of $5,585.82.  On June 18, 2012, Citibank sold both credit card accounts to Pilot

Receivables Management, LLC ("Pilot Receivables"), and on September 1, 2012, it assigned the accounts for collection to Unifund CCR, LLC ("Unifund").

On December 2, 2013, Unifund filed this action to collect on Account No. 2085, and on May 23, 2014, it filed an amended complaint to add a claim to collect on Account No. 0415. Ms. Lowe filed an answer asserting the affirmative defense of the statute of limitations and four counterclaims. Both parties moved for summary judgment, with the primary issue being the applicable statute of limitations. Unifund contended that the applicable statute of limitations was the five-year statute applicable to an action on a written contract, and Ms. Lowe contended that the applicable statute of limitations was the four-year statute applicable to an action on an oral contract. Both parties agreed that the statute of limitations began to run on each account on the date of the last payment. The district court ruled that the five-year statute of limitations applied. Ms. Lowe then agreed to withdraw her counterclaims in exchange for an offset of $500 against the amount of any judgment obtained by Unifund. The district court entered a judgment against her in the sum of $35,259.87, which included the principal, prejudgment interest, court costs and attorney fees. Ms. Lowe then timely appealed.

## II.
### Did the District Court Err in Holding that the Cardholder Agreements Were Contracts in Writing?

"An action upon any contract, obligation or liability founded upon an instrument in writing" must be brought within five years of when the cause of action accrued. I.C. § 5-216. A cause of action on an open account "is deemed to have accrued from the time of the last item proved in the account on either side." I.C. § 5-222. In this case, both parties agree that the last item on each account was Ms. Lowe's last payment on the account.

Based upon *Hoglan v. First Security Bank of Idaho, N.A.*, 120 Idaho 682, 819 P.2d 100 (1991), the district court held that this was an action on a contract in writing.[1] In *Hoglan*, this Court addressed the issue of the statute of limitations applicable to a breach of contract claim

---

[1] Unifund argued in the district court that South Dakota Codified Laws section 51A-12-12 (2013) and the terms of the cardholder agreements provide that South Dakota law applies, which would include the applicable South Dakota six-year statute of limitations. Because the district court based its decision on the five-year statute of limitations in Idaho Code section 5-216, we need not address which law applies.

regarding a credit card account. We held that the five-year statute in Idaho Code section 5-216 applied, stating:

> An action on a written contract must be commenced within five years. I.C. § 5–216. The earliest act which could be considered the basis for a breach of contract claim occurred in March of 1983, when First Security stopped sending the monthly statements. The filing by the Hoglans in August of 1987 is within the five year period. The Hoglans' action for breach of contract clearly falls within this limitation and was not barred by the statute of limitations.

*Id*. at 685, 819 P.2d at 103. In the present case, the district court wrote, "[G]iven the written Card Agreement provided by Unifund, which Lowe has offered no evidence to contest, there is no reason why this court should not reach the same conclusion the Supreme Court reached in *Hoglan*."

Ms. Lowe argues that the *Hoglan* opinion does not state how this Court came to its conclusion and that the opinion does not provide any information regarding the nature of the contract at issue. She contends that the test for a contract in writing should be a requirement that all essential terms can be ascertained from the written instrument itself, including the identities of the parties and the parties' acceptance of the contract terms by their signatures on the contract. She asserts that if parol evidence is necessary to establish that Ms. Lowe received the Card Agreement or accepted it by using the card, then the Card Agreement is not a written contract. That argument is not consistent with Idaho law.

"A contract must be complete, definite and certain in all its material terms, or *contain provisions which are capable in themselves of being reduced to certainty*." *Giacobbi Square v. PEK Corp*., 105 Idaho 346, 348, 670 P.2d 51, 53 (1983). Thus, in *Wakelam v. Hagood*, 151 Idaho 688, 263 P.3d 742 (2011), the owner of three parcels of real property signed an agreement to have them sold at absolute auction to the highest bidder. *Id*. at 693-94, 263 P.3d at 747-48. When the auction did not produce high-enough bids, the owner refused to complete the sales, and the high bidders sued seeking specific performance and damages. *Id*. at 690, 263 P.3d at 744. The owner contended that the transaction was barred by the statute of frauds, which required that a contract to convey real property must be an "instrument in writing" signed by the seller. *Id*. at 691, 263 P.3d at 745. Relying upon *Giacobbi Square*, we held that it would not violate the statute of frauds if the seller of real property agreed in writing that the sale price of

3

the real property and the identity of the buyer could be determined by an absolute auction. We stated:

> Therefore, a seller can agree that, rather than stating a definite purchase price, the land sale contract provide a definite method to determine the purchase price, such as being established by an appraiser, by arbitrators, or by the successful bidder at an absolute auction. Similarly, the seller can agree that the identity of the purchaser will be determined by a definite method, such as the highest bidder at an absolute auction.

*Id.* at 693, 263 P.3d at 747.

The cardholder agreement in *Hoglan* was a one-page, preprinted form.[2] It began by stating, "By signing, requesting, using or permitting others to sign or use a Visa card issued by First Security Bank (BANK), you hereby agree to all of the following procedures, terms and conditions:," and it then set forth the terms and conditions. The cardholder agreement was unsigned and did not include the Hoglans' names. Parol evidence was necessary to show that a credit card was issued by the bank and that it was the Hoglans who signed, requested, used, or permitted others to sign or use the credit card. The cardholder agreement also referred to terms in another writing. It stated, "You agree to be bound by the terms and conditions set forth on the card . . . ." Nevertheless, this Court held that the cardholder agreement was an instrument in writing and that the five-year statute of limitations in Idaho Code section 5-216 applied.

With respect to meeting the requirement of being an instrument in writing, the cardholder agreements in this case are not materially different from the cardholder agreement in the *Hoglan* case, although they are longer contracts. Rather than being a one-page form consisting of 668 words as in the *Hoglan* case, the cardholder agreements in this case are each four printed pages,[3] one of which contains 6,798 words, and the other of which contains 5,579 words. As in *Hoglan*, they are both preprinted, unsigned forms. Both are titled "Card Agreement," and both begin by stating: "This Card Agreement is your contract with us. It governs the use of your card and account." Both also stated that there was an enclosed "Fact Sheet" that was part of the Card

---

[2] A copy of the cardholder agreement is in the Supreme Court file of the *Hoglan* case.

[3] The two cardholder agreements in this case were designed to be folded, so there were four numbered pages on each printed page.

4

Agreement.[4] One Card Agreement based its annual percentage rate on the prime rate and told how the prime rate would be determined and how, along with the Fact Sheet, the annual percentage rate was calculated based upon the prime rate. The other stated that the annual percentage rate would be as stated on the Fact Sheet. Both Card Agreements stated how, along with the Fact Sheet, interest charges would be applied and daily balances calculated; how the minimum payments would be calculated; how payments would be applied; what fees and their amounts would be applicable; and whether arbitration was applicable and how it would be conducted. Finally, the Card Agreements both stated what would constitute a default and provided that Citibank could "change the rates, fees, and terms of this Agreement from time to time as permitted by law." The district court did not err in holding that the Card Agreements were contracts in writing and that this was an action founded upon an instrument in writing.

Ms. Lowe contended in the district court that the credit card agreements were open accounts, and therefore the four-year statute of limitations applied. In making that argument, she relied upon Idaho Code section 5-222, which states, "In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action is deemed to have accrued from the time of the last item proved in the account on either side." That statute defines when a cause of action accrues on an open account. It does not state the applicable statute of limitations. The terms of an open account can be set forth in a written contract. The district court did not err in holding that the five-year statute of limitations in Idaho Code section 5-216 applied.

## III.
### Did the District Court Err in Granting Summary Judgment to Unifund?

A trial court may grant a motion for summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In an appeal from a summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). All disputed

---

[4] The Fact Sheets sent to Ms. Lowe when she obtained each credit card are not part of the record, but she did not raise that issue. The reference to them indicates that they were written documents.

5

facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* at 47, 44 P.3d at 1102.

In its complaint filed on December 2, 2013, Unifund sued to recover on Account No. 2085 and alleged that there was an "Account Agreement," but it did not describe that agreement or allege it was in writing. On April 21, 2014, Ms. Lowe filed a motion for summary judgment, contending that Unifund had not provided any evidence of a contract or its terms. Before the hearing on Ms. Lowe's motion, Unifund moved to vacate the hearing and to file an amended complaint, and the district court granted those motions.

Unifund filed an amended complaint seeking to recover on both credit card accounts. It then filed a motion for summary judgment and supported that motion with three affidavits. One of the affiants was the custodian of records for Citibank, and she stated that the cardholder agreements in effect when Ms. Lowe's accounts were charged off were included in the ninety-three pages of records attached to the employee's affidavit. In her affidavit, she averred:

> 3. Attached hereto are  93  pages of records from the business records of Citibank, or a predecessor in interest, for the accounts of Lorene Lowe, whose Social Security number has the last three digits of [], account numbers ending in 0415 and 2085.
> . . . .
> 5. Citibank's practice with regard to all credit card accounts opened by it is to provide the applicant with a copy of the written terms of the credit card in a document entitled "Credit Card Agreement" and use of the card constitutes written agreement by the cardholder to those written terms.
> 6. If a cardholder does not agree to the written terms contained in the cardholder agreement, Citibank's policy is to close the account.
> 7. The original application for the referenced account ending in 0415 has not been retained by Citibank.
> 8. The original application for the referenced account ending in 2085 and the cardholder agreements that were in effect at the time both referenced accounts were charged off are included in the attached documents referenced in paragraph 3.

Included in the ninety-three pages of attached documents were the two Card Agreements discussed above. Ms. Lowe did not object to the above-quoted statements in the affidavit, nor did she file any affidavit, deposition, or other sworn statement challenging any of those statements. Unifund also filed the affidavit of another Citibank employee stating the balance owing on each credit card account at the time the account was sold to Pilot Receivables and the

6

date of the last payment on each account. Ms. Lowe did not submit any evidence challenging those statements either.

"In order for a contract to be formed there must be a meeting of the minds. A meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance." *Barry v. Pac. W. Constr., Inc.*, 140 Idaho 827, 831, 103 P.3d 440, 444 (2004) (internal citation omitted). "The manifestation or expression of assent that is necessary to form a contract may be by word, act, or conduct that shows the intention of the parties to contract." 17A Am. Jur. 2d *Contracts* § 34 (2004).

In her opening brief on appeal Ms. Lowe states: "There is no doubt that a contract between Ms. Lowe and Citibank was formed, however it is an implied contract based upon the conduct of the parties, and not a contract founded upon a written instrument." She further states:

> Here, Citibank extended credit to Ms. Lowe. She used the account to make purchases and obtain services. Citibank would provide the money to the merchants. Each month Citibank would send a request for payment in the form of a statement. Ms. Lowe would then make payments. Citibank would then extend credit again, and the cycle would continue. Citibank gave the credit cards to Ms. Lowe in anticipation not of lending her a sum certain once and then having her pay it back, but rather Citibank intended this to be a long-term relationship where each party makes transactions, where the balance is unascertained, and there are future transactions.

Other than, in essence, asking us to overrule *Hoglan*, the only argument that Ms. Lowe makes regarding the grant of summary judgment is that the two Card Agreements in evidence were issued after she made the last payments on the accounts. She states:

> The Card Agreement submitted to the court by Unifund had a 2010 date on it. Ms. Lowe's last use of the cards was in 2009. If the court is going to hold that use of the card was acceptance of the terms of the agreement, then Unifund has failed to show that condition is met in this case.

In her affidavit submitted in support of Unifund's motion for summary judgment, the custodian of Citibank's records stated that the two Card Agreements discussed above "were in effect at the time both referenced accounts were charged off." Ms. Lowe did not object to that statement, nor did she offer any evidence contradicting it. Likewise, she did not assert in the district court that those Card Agreements were not in effect at the time the accounts were charged off.

7

After the Card Agreements were placed in the record through the affidavit of Citibank's records custodian, Ms. Lowe's only mention of them was in connection with her argument regarding whether South Dakota or Idaho law applied. In her supplemental brief filed on September 9, 2014, she began by stating, "Before embarking on a trip down the rabbit hole known as a choice-of-laws analysis, Defendant believes this matter could be resolved more easily by first analyzing if Plaintiff can enforce the choice-of-law provision calling for the application of South Dakota Law in the Cardmember Agreement between Citibank and Ms. Lowe." She then argued that Unifund could not do so because it was not in privity of contract with Ms. Lowe because it was only assigned a debt for collection, it was not assigned Citibank's rights under the contracts.

Ms. Lowe did not argue to the district court that the Card Agreements in evidence were issued after she had made her last payments. "This Court's longstanding rule is that it will not consider issues raised for the first time on appeal." *KEB Enters., L.P. v. Smedley*, 140 Idaho 746, 752, 101 P.3d 690, 696 (2004).

## IV.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Ms. Lowe requests an award of attorney fees on appeal pursuant to Idaho Code sections 12-120(1) and 12-120(3). Both statutes only provide for the awarding of attorney fees to the prevailing party. Because she is not the prevailing party on appeal, she is not entitled to an award of attorney fees under either statute.

Unifund requests an award of attorney fees on appeal pursuant to Idaho Code sections 12-120(1), 12-120(3), and the Card Agreement.

Idaho Code section 12-120(1) provides for the awarding of attorney fees to the prevailing party in any action where the amount pleaded is $35,000 or less. "For the plaintiff to be awarded attorney's fees [under that statute], for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action." I. C. § 12-120(1). Unifund contends that it made the required written demand before filing this action. It refers to the allegation in its amended complaint stating, "Although Plaintiff has made repeated written and oral demands for payment of the amounts set forth herein not less than 10 days prior to the institution of this action, Defendant has

refused and continue [sic] to refuse to pay the same."[5] It states that "[t]hese facts were not refuted." In her answer to the amended complaint, Ms. Lowe denied these allegations.

There are no facts in the record showing that Unifund had made the required written demand prior to filing this action. After the district court granted summary judgment in favor of Unifund, it filed a memorandum of costs. In the memorandum of costs, it requested an award of attorney fees, but did not cite any statutory basis for the award, nor had it cited any basis for the award in its amended complaint. It did not submit an affidavit alleging compliance with the written-notice requirement of Idaho Code section 12-120(1). Ms. Lowe did not object to the attorney fees requested, and the court awarded that amount. However, absent a showing of the required written demand prior to filing this lawsuit, Unifund is not entitled to an award of attorney fees under Idaho Code section 12-120(1).

Unifund requests an award of attorney fees under that portion of Idaho Code section 12-120(3) that provides, "In any civil action to recover on . . . [a] contract relating to the purchase or sale of . . . services . . . , the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." Unifund asserts that this was an action to recover on a contract relating to the purchase or sale of services—specifically financial services. Ms. Lowe agrees. Therefore, we will award Unifund attorney fees under section 12-120(3) because it is the prevailing party on appeal. Therefore, we need not address whether attorney fees are awardable under the Card Agreement.

## V.
### Conclusion.

We affirm the judgment of the district court and award Respondent costs and attorney fees on appeal.

Justices BURDICK, W. JONES, and HORTON **CONCUR.**

---

[5] Unifund also refers to the identical allegation in its original complaint, but any allegation in the original complaint is irrelevant. "The amendment of the complaint supersedes the original complaint and all subsequent proceedings are based upon the amended complaint." *W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 739, 653 P.2d 791, 794 (1982).

J. JONES, Chief Justice, specially concurring.

I concur in the Court's opinion, based on the facts and arguments presented by the parties. The case offered some interesting possibilities for development of the law in the collections arena but, based upon the litigation strategies adopted by counsel for the parties, the Court appropriately refrained from exploring them.

The first issue relates to the date upon which the appropriate statute of limitations commenced to run. The parties treated Ms. Lowe's credit card indebtedness as an open account under Idaho Code section 5-222, which provides that a "cause of action is deemed to have accrued from the time of the last item proved in the account on either side." Both sides asserted that the statute here began to run from the date of Lowe's last payment on each of the accounts. As the Court noted, however, that does not determine which statute of limitations applies.

This was styled for statute of limitations purposes as an action to recover upon a contract. Lowe contended that the contract was oral, thereby invoking the four-year statute of limitations in Idaho Code section 5-217. Unifund contended that the defaulted accounts were "founded upon an instrument in writing," requiring application of the five-year statute of limitations in Idaho Code section 5-216.

Neither party raised the question of whether the language of the Card Agreements should determine when the right of action accrued. The right to sue under a contract commences upon a breach of the contract. The two Card Agreements in this case provide, "You default under this Agreement if you fail to pay the Minimum Amount Due by its due date. . . . or default under any other Card Agreement that you have with us." A default under either of the contracts at issue here does not necessarily coincide with the last payment date. A failure to make a minimum payment by its due date could occur either before or after the last payment. At oral argument neither counsel was aware of when a default under either agreement actually occurred. Thus, there was no basis to address this issue in the opinion.

Neither did the Court get a full picture of the agreements that were entered into between Lowe and Citibank. The only agreements contained in the record are the two Card Agreements, both bearing a 2010 copyright. Although Lowe makes the argument for the first time on appeal that this cannot suffice to establish a written agreement, since the 2010 date is clearly after the last payment made in 2009 on either account, Lowe did not make such an argument in district

10

court, nor did she object to this evidence or seek to strike it. Neither party brought to the district court's attention the original applications that Lowe made for either account or any card agreement that preceded the 2010 version.

Although the parties agreed that Lowe defaulted and was delinquent on both accounts, there was limited discussion by the parties as to whether Unifund could invoke the provisions of the Card Agreements in this case. It is clear that Unifund could not automatically step into Citibank's shoes under the Card Agreements. Lowe's accounts were sold to Pilot Receivables Management, LLC, on June 18, 2012, pursuant to a Bill of Sale and Assignment. That document did not purport to assign the entirety of Citibank's contract rights under the Card Agreements to Pilot. On September 1, 2012, Pilot assigned Lowe's accounts to Unifund CCR, LLC, for collection purposes. The Assignment states that Pilot assigned all of its "rights in the Receivables, for collection purposes only," and that Pilot "shall retain title and ownership of such Receivables."

Both in district court and on appeal, Unifund claimed that it was entitled to invoke the choice of law provision in the Card Agreements, which called for the application of South Dakota law, particularly the six-year South Dakota statute of limitations. In response, Lowe contended that Citibank did not assign its contract rights to Pilot and that Unifund had only received the right to collect the amounts she owed. Therefore, Lowe contended that Unifund had no basis to invoke the choice of law provision. In support of her argument, Lowe cited to this Court's decision in *Medical Recovery Services, LLC v. Strawn*, 156 Idaho 153, 321 P.3d 703 (2014). In that case, we held that a collection agency did not "step into the shoes of [a creditor] to assert the [creditor's] contractual rights," where the agreement between the creditor and the collection agency only assigned "the debt herein sued upon . . . for the purpose of collection," rather than the creditor's contract rights, and that the collection agency had no standing to enforce those contract rights. *Id*. at 158, 321 P.3d at 708. The district court did not specifically rule upon the choice of law issue, but did apply Idaho law with respect to the issues decided. Even if this constituted an implied ruling on the issue, it is not appropriate to consider the issue on appeal since Unifund failed to file a cross appeal on that issue.

The Court's award of attorney fees on appeal is correct, based upon the particular facts of this case, but that does not necessarily mean that a fee award would be available to an account collector such as Unifund in every instance. In this case, Unifund asserted entitlement to a fee

11

award on appeal "under I.C. § 12-120(1) and (3) and pursuant to the contractual provisions of the Account Agreement." The Court correctly observes that Idaho Code section 12-120(1) does not provide the basis for a fee award because no written demand was made upon Lowe prior to the commencement of the action. Neither could Unifund claim fees under the Card Agreements because it was not assigned Citibank's contract rights under those agreements.

Unifund made a bare-bones claim for attorney fees on appeal, asserting that this case involved a civil action to recover on a contract relating to the purchase of financial services. Lowe failed to assert any arguments in opposition, to point out that there was no contract or commercial transaction between her and Unifund, or to point out the paucity of argument in support of Unifund's claim. Rather, Lowe provided support for that claim by advancing her own argument in support of a fee award in her favor under section 12-120(3). She agreed that her transaction with Citibank "qualifies under I.C. § 12-120(3) as a service." She continued,

> Here, the agreement between Citibank and Ms. Lowe would provide funds to stores, restaurants, and the like whenever Ms. Lowe wanted to make purchases and that Ms. Lowe would pay Citibank after receiving a written statement. This is a service Citibank provided. All service contracts are encompassed by I.C. § 12-120(3).

"Where a party alleges the existence of a contractual relationship of a type embraced by I.C. § 12-120(3), that claim triggers the application of the statute, and the prevailing party may recover fees even though no liability under a contract was established." *Huyett v. Idaho State University*, 140 Idaho 904, 911, 104 P.3d 946, 953 (2004). By seeking fees on appeal from Unifund, Lowe certainly appears to imply a contractual relationship between them, even though it does not appear that one actually existed. Nevertheless, the allegation triggered the application of Section 12-120(3).